### A96A0116. ADKINS v. THE STATE.
(471 SE2d 896)

PER CURIAM.

William Bradford Adkins appeals his conviction for misdemeanor stalking. He contends he was entitled to a directed verdict of acquittal because he merely delivered a letter to the victim and was thus not doing an act which served "no legitimate purpose," and that his acts did not constitute a "knowing and wilful course of conduct" under OCGA § 16-5-90. He also contends the evidence is insufficient to support the conviction because his acts were not "threatening," and that he was acting within his constitutionally protected freedom of speech. *Held*:

OCGA § 16-5-90 defines "stalking" as being when a person "follows, places under surveillance, or contacts another person . . . without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term 'harassing and intimidating' means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself or to a member of his or her immediate family, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made."

Conduct found to be in violation of this law is not among the "constitutionally protected" freedoms. See *Johnson v. State*, 264 Ga. 590 (449 SE2d 94).

The trier of fact weighed the evidence and assessed the witness's credibility. Upon the finding of guilt, the presumption of innocence no longer applies, and on appeal, we construe the evidence in favor of the findings of the trier of fact; we do not weigh the evidence or determine witness credibility but merely determine the sufficiency of the evidence. *Weldon v. State*, 211 Ga. App. 602 (440 SE2d 57).

The evidence shows that appellant's sister and the victim were very good friends. The victim sometimes spent the night at her girl friend's house where appellant also lived. Appellant, who is about ten years older than the victim, owns a mechanic shop. He and the victim became good friends. He helped her get her first car; they went to a restaurant for dinner once and he helped her move. They never "dated" but on one occasion they went to a movie because they had "some time to kill." She called him "once in a blue moon, just to see

how he was doing. . . . He's not a bad person. We always got along fine. It's just the way he felt toward me. He really started scaring me and my family." She began to be afraid of him and got nervous around him. He would appear at her place of work, and once he broke into her car or used a key which he may have had made and left a rose on the car seat. After she spent a night at her girl friend's house, appellant wrote a letter to the victim's parents and "went into detail that he had done a bunch of things sexually to me while I was sleeping and he realized that I was asleep." She was not interested in him romantically and when she realized that he believed he loved her, she began to shy away from him and ceased doing things with his sister. However, appellant refused to believe she did not love him and he determined that they would have a love relationship. He went to the phone company and found a telephone book which he thought proved she had lived with her boyfriend instead of with a roommate, and he wrote her a letter insinuating that her mother would find this out. He called her parents until they changed their telephone number. He wrote letters to the victim and would sometimes send copies of those letters to her parents; he also wrote her parents, her uncle and her boyfriend, expressing "concern" about her and attempting to dictate her activities and her future. She never answered these letters and as their frequency and insistence increased, she became afraid.

The letters and evidence show appellant knew the victim did not requite his "love" but that he tried to intimidate her and frighten her into meeting him and acceding to his demand that they have a relationship, and that he used his "concern" and the fact that he had helped her get a car to intimidate and exert control over her. He described how he had almost committed suicide because she did not return his love and how he had to give his gun to a friend so he would not shoot himself. After the victim did not answer one letter, he wrote another, saying "I hope we have talked before you get this [or] you may find me waiting for you on your doorstep one day. This is a [coupon] to have one sunroof [installed] in your Honda. There are some conditions that must be [met] first. This will be done at my [discretion]. We must first have a talk about our relationship. This will also be done on my [terms]. That is not on the phone or with any of your friends or mine around to [interfere]." Appellant was charged with stalking after he drove from Marietta to Gwinnett County and delivered a letter to the victim at her workplace, which caused her such distress that her supervisor called the police.

We have examined the evidence and the letters in the record. The content of the letters is such that in the circumstances they were threatening, harassful and intimidating, the more so because appellant's threats and hints of violence and danger were only thinly

veiled and laced with declarations of love and selfless concern.

Appellant contends that because the victim acted friendly and politely toward him when she visited his shop near her father's shop shortly before appellant delivered this letter, and because he never hit her, he cannot be accountable for stalking under OCGA § 16-5-90. However, the statute makes no such allowance. The fact that the victim acted in a friendly and polite manner toward appellant may in the circumstances more plainly reflect her fear than any remonstration would have done. Moreover, the statute expressly provides that it "shall not be construed to require that an overt threat of death or bodily injury has been made." OCGA § 16-5-90. The fact that he delivered a letter in a public place is not an act which served a "legitimate purpose" so as to exonerate that act as "stalking" within the meaning of OCGA § 16-5-90. Moreover, his delivery of this letter was not the only act constituting the State's proof; it was merely part of appellant's wilful course of harassful and intimidating conduct.

There is no verdict in a bench trial; the issue is simply whether the evidence is sufficient to support the conviction. *Blair v. State*, 216 Ga. App. 545, 546 (455 SE2d 97). The evidence is amply sufficient to persuade a reasonable trier of fact of his guilt of the criminal offense of stalking, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Division Per Curiam. All the Judges concur.*

DECIDED APRIL 17, 1996 —
RECONSIDERATION DENIED MAY 20, 1996.

*Robertson & Walker, Charles T. Robertson II*, for appellant.
*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Assistant Solicitor*, for appellee.

