A97A1248. HALL v. THE STATE.
(487 SE2d 41)

ELDRIDGE, Judge.

The appellant, Larry Hall, was charged with two counts of stalking and one count of harassing phone calls by an accusation dated June 26, 1996. On June 27, 1996, the jury returned a verdict of not guilty on Count 1, stalking, and a verdict of guilty on Count 2, stalking, and Count 3, harassing phone calls.

The appellant, in his sole enumeration of error, alleges that there is insufficient evidence to support the verdict rendered on Counts 2 and 3 of the accusation.

It is for the trier of fact to weigh the evidence and assess the witnesses' credibility. "Upon the finding of guilt, the presumption of innocence no longer applies, and on appeal, we construe the evidence in favor of the findings of the trier of fact; we do not weigh the evidence or determine witness credibility but merely determine the sufficiency of the evidence. [Cit.]" *Adkins v. State,* 221 Ga. App. 460 (471 SE2d 896) (1996).

(a) "A person commits the offense of harassing phone calls if such person telephones another person repeatedly, whether or not conversation ensues, for the purpose of annoying, harassing, or molesting another person . . .; uses over the telephone language threatening bodily harm; [or] telephones and intentionally fails to hang up or disengage the connection. . . ." OCGA § 16-11-39.1 (a). The evidence presented at trial showed the following:

The appellant was engaged in a romantic relationship with the victim, Sybil Coston, from December 1993, or January 1994, through

August 1995. The couple "broke-up" in April 1995, but soon got back together. In August 1995, Coston ended the relationship, telling the appellant that she did not wish to see him or talk with him again.

After the appellant and Coston ceased dating in August 1995, the appellant started telephoning Coston, her parents, and her friends. Coston testified that she believed that she received approximately 150 telephone calls from the appellant, despite the fact she had asked him not to call her any longer; that initially he would talk or leave a "tape full of messages" on her answering machine; that she was able to recognize his voice over the telephone because of the many times in the past she had spoken to the appellant on the telephone; that of these 150 telephone calls, she recognized his voice on at least 50 to 60 of the calls; that she received telephone calls all through the day and night, up until 1:00 or 2:00 a.m.; and that she finally had her telephone number changed. Coston further testified that the appellant obtained her new telephone number within a few days and that after she had her number changed, the appellant would often not speak and hang up; however, Coston's caller I.D. often recorded that the calls were coming from the telephone number for the appellant's place of employment. Coston went on to testify that the appellant had both his mother and his daughter call her. Further, Coston testified that on some days the calls would come one after the other. However, there were times when a couple of days would go by without the appellant calling.

Coston also received telephone calls from the appellant on her cellular phone and had to have that number changed. Coston received such a large number of telephone calls that she contacted the annoyance call center for the telephone company and requested its assistance in stopping the telephone calls, and she also began keeping a handwritten log of all incoming telephone calls, which showed the telephone number that appeared on her caller I.D. On two separate occasions, the appellant telephoned Coston collect and gave a false name. When Coston accepted the telephone calls, the appellant responded with, "Oh, you will take a call from them but you won't take one from me."

The appellant argues that the State failed to prove that he was, in fact, the person who called Coston because none of the calls was made from the appellant's home telephone; that the calls from the Farmers' Market were not from the telephone of the Farmers' Market Police Department where the appellant was employed; and that the remainder of the calls originated from coin telephones or from telephones in places of business other than appellant's employment. However, these arguments are without merit in light of Coston's testimony that she recognized the appellant's voice on approximately 50 to 60 of the telephone calls and the appellant's own testimony that he

did, in fact, call Coston after they broke up in August 1995. The jury chose to reject the appellant's testimony that Coston had never requested him not to call her after August 1995. Viewed in a light most favorable to upholding the jury's verdict, the evidence presented at trial was sufficient to authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the offense of harassing phone calls. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979.).

(b) "A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. For the purpose of this article, the term 'place or places' shall include any public or private property occupied by the victim other than the residence of the defendant. For the purposes of this article, the term 'harassing and intimidating' means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself . . . and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made." OCGA § 16-5-90 (a). The evidence presented at trial showed the following:

After the relationship between Coston and the appellant ceased in August 1995, the appellant followed Coston on four different occasions. On the first occasion, Coston was driving down the street and when she looked in her rearview mirror, she saw the appellant behind her. Coston testified that she increased the speed at which she was driving and made several turns but that the appellant continued to follow her; that when she got to Memorial Drive the appellant tried to pull up beside her, but she was able to drive away. Finally, Coston drove into the parking lot of a Blockbuster Video store and ran inside the building. Coston testified that she was frightened and asked the employees of the store "to look at him." When Coston left the store, the appellant was standing at her car and would not allow her to shut the car door.

The second incident occurred when Coston went to a Cub Food store which was attached to a K-Mart.[1] When Coston entered Cub Food, the appellant was at the front of the store, and he spoke to Coston. When Coston went to check out, the appellant was still at the front of the store and started to walk toward her. Coston testified that she paid for the items and went through K-Mart so that she

---

[1] Coston was unaware that the appellant was employed by this K-Mart to perform undercover work.

could exit at a door other than the one at which the appellant was standing. When Coston started across the parking lot, she saw the appellant walking toward her. The appellant met Coston at her car and tried to talk with her as she got into her car.

The third incident occurred when Coston and her roommate were returning home. The appellant followed them into their apartment complex but did not exit his car.

The fourth incident occurred when Coston was unloading groceries from her car at her home. The appellant drove up in his car. Coston testified that she was frightened "because he startled me just by saying something when I was in the trunk of my car."

Coston further testified that there were many incidents after August 1995, when she came home from work, and the appellant would be sitting at the gas station down the street, or coming out of her apartment complex. Coston further testified that her apartment complex is on a dead-end street that has no outlet and that the appellant lived approximately one mile away.

The appellant also sent things to Coston's place of employment, sent Coston numerous greeting cards, and left teddy bears, flowers, and cards on her doorstep. In October 1995, Coston went to Magistrate Court and requested a warrant be issued against the appellant. When she arrived in the parking lot for the hearing, the appellant was waiting for her and attempted to give her "a bag or something," which she refused. Coston also testified that the appellant proposed to her that day outside the courthouse. The judge ordered the appellant to stay away from Coston.

The appellant's argument that his behavior toward Coston was neither "harassing or intimidating" because his actions did not place Coston in reasonable fear of death or bodily harm is without merit. Coston testified that the appellant's behavior frightened her; that even though the appellant had never been physically violent toward her, he would get upset and yell and scream, and he was verbally abusive toward her; and that her fear further stemmed from her knowledge that the appellant was a police officer and owned three guns. Although the appellant testified that he was only seeking to rekindle a relationship and gave testimony that sought to undermine Coston's testimony that she was in fear, the jury was authorized to believe Coston's testimony. Clearly, the appellant's behavior went beyond what would be considered normal efforts to rekindle a relationship. Viewed in a light most favorable to upholding the jury's verdict, the evidence presented at trial was sufficient to authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the offense of stalking. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MAY 7, 1997.
Before Judge Majette.
*H & M Johnson, Henry C. Johnson, Jr.*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, Noah H. Pines, W. Cliff Howard, Assistant Solicitors*, for appellee.