## A97A1288. FLY v. THE STATE.
### (494 SE2d 95)

Judge Harold R. Banke.

Thomas Fly, acting pro se, was convicted of four counts of aggravated stalking. In his pro se appeal, he enumerates ten errors.

This case arose after Fly, then a co-worker of the victim, asked her to purchase theater tickets from him. *Price v. State*, 222 Ga. App. 655, 657 (2) (475 SE2d 692) (1996) (evidence on appeal must be viewed in a light most favorable to the verdict). After the victim responded that she lacked the funds, she accepted Fly's offers to trade a ticket for handicrafts she made and pick her up for dinner prior to the play. This event in November 1991 was their only "date."

Over the next several months, Fly continued to leave the victim increasingly invasive messages and presents, including a burglar alarm he left on her doorstep with a message that breaking into her home would be easy. It subsequently became apparent that Fly had access to the victim's computer at her new job. The victim informed her supervisor, who learned that Fly was then working for a subcontractor. When Fly was discharged, he blamed the victim for telling her supervisor. He left the victim a note which said "be aware that you have got about a billion heart beats left . . . and your parents have no more than a few hundred million. . . ." Fly continued calling the victim and began sending numerous letters to the victim's parents, brother, friends, and her former employer about his feelings for her.

In January 1993, he left her two letters and two $100 bills. One of the letters stated, "I hope you don't have to die or nearly die to realize that I really cared about you and that maybe it is not in the past tense." After receiving this, the victim changed her telephone number, but Fly continued to leave her messages at work. The letters

he sent made it clear that he was watching her house, going through her trash to obtain the addresses of her friends, and following her. The victim began burning her trash.

After subsequent letters established that Fly had tapped the victim's phone, she swore out a warrant on eavesdropping charges and obtained a restraining order prohibiting Fly from contacting her. Three months later, Fly began leaving the victim phone messages with quotes from movies. Fly also contacted the victim's mother, her friends, a co-worker, her minister, and the dean of her law school.

Fly pleaded guilty to the eavesdropping charges. One of the conditions of his probation was to refrain from contacting the victim. After several months, however, Fly sporadically resumed contact, leaving her songs about lies and death.

On June 6, 1994, Fly left several messages on the victim's voice mail at work. Two of the messages were songs, including "Sympathy for the Devil."

On June 12, 1994, Fly left a message from a movie called "Fright Night" in which a young man is accused of killing a girl. This frightened the victim so much she moved out of her apartment for a month, until Fly was arrested and jailed. During that month, Fly continued to leave her messages and packages and he contacted her friends.

On August 1, 1994, Fly sent the victim's minister a letter from jail which enclosed a copy of a letter he had sent to the victim's father.[1] This letter stated in part, "I have nothing but loathing and contempt and revulsion for [the victim] and anyone remotely like her. She is self interested [sic], vengeful, vindictive, and hateful and fundamentally dishonest. She is the only person with whom I have been personally acquainted that I can truly say I hate, and if she is my enemy it is only because she made me her enemy." On August 19, 1994, the victim received a letter from Fly which included a cartoon and articles with references derogatory to lawyers.

After a hearing, Fly's probation was reinstated on the condition that he leave the State and refrain from contacting the victim or anyone affiliated with her. Three months later, he left her a message and the victim again changed her phone number. Within a week, Fly left a cassette tape on the hood of her car during the night. Fly was arrested again, but he continued to send letters to the victim and her parents from jail. On May 11, 1995, Fly sent the victim an envelope of clippings with his bitter commentary about lawyers and the evils of the world. *Held*:

1. The evidence, viewed in the light most favorable to the verdict,

---

[1] The minister testified that in total Fly had sent him over 200 letters and other materials.

was sufficient to permit the jury to find all the essential elements of the crimes. *Jackson v. Virginia*, 443 U. S. 307, 319-320 (99 SC 2781, 61 LE2d 560) (1979). The relevant elements of aggravated stalking are: unconsented-to contact with another for the purpose of harassing and intimidating them in violation of a condition of probation. OCGA § 16-5-91 (a). The term "harassing and intimidating" means "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm" to herself or an immediate family member and serves no legitimate purpose. OCGA § 16-5-90 (a). Overt threats of bodily harm are not required. Id.

The record shows that Fly pleaded guilty to eavesdropping and possession of an eavesdropping device in December 1993. As a condition of his probation, Fly was ordered to refrain from any contact with the victim. The record establishes Fly's long, escalating history of harassing and intimidating the victim, beginning in 1992, when he tapped her phone, invaded her office computer, and continued his unwelcome contact, evidence sufficient to establish Fly's intent to harass and intimidate.

The remaining elements of Count 1 were established by the victim's testimony that she received several telephone messages from Fly on June 6, 1994. The victim characterized these messages as "mean" and "threatening" in part because they implied that Fly was inescapable. Testimony of Fly's prior contacts and the evidence of Fly's conviction, joined with proof that Fly sent the victim an August 15, 1994, letter from jail which included, inter alia, a cartoon depicting an aspiring lawyer as a walking piece of feces, was sufficient to justify the verdict on Count 3. Testimony that Fly sent the victim a May 11, 1995 package of articles which included a cartoon on which Fly wrote, "I wonder why you lieyer [sic] sh..s (pardon the redundancy) consider bugging a phone such a horrendous crime!" was sufficient to warrant jury consideration of Count 4.[2] On another article in this package about a proposed exhibit at the Smithsonian which purportedly would have depicted Japan as a victim in World War II, Fly wrote racial epithets in reference to the judge who sentenced him on the eavesdropping case and sarcastically congratulated the victim on her great victory at Pearl Harbor, presumably a reference to her taking an aggressive stance while assuming the role of victim.

In isolation, none of the cartoons, clippings, or comments which provide the basis for Counts 3 and 4 would elicit reasonable fear of death or bodily harm. However, viewed in the context of Fly's lengthy

---

[2] The indictment originally charged six counts of aggravated stalking. Counts 4 and 5 were dismissed before trial. The court then converted the original Count 6 to Count 4.

history of unhealthy, unremitting, and increasingly hostile communication with the victim, her friends, and acquaintances, we believe the issue of the reasonableness of the victim's fear presented a jury question. See *Hall v. State*, 226 Ga. App. 380, 383 (b) (487 SE2d 41) (1997) (analyzing sufficiency of evidence of reasonable fear in the context of the parties' prior dealings).

2. Fly's contentions that the aggravated stalking statute is unconstitutionally vague and over broad are foreclosed by *Johnson v. State*, 264 Ga. 590, 592 (1) (449 SE2d 94) (1994). As to Fly's inference that his First Amendment rights were somehow abridged by his prosecution, "[c]onduct found to be in violation of the law is not among the 'constitutionally protected' freedoms. [Cit.]" *Adkins v. State*, 221 Ga. App. 460 (471 SE2d 896) (1996). Notwithstanding Fly's argument to the contrary, the stalking statute is not "content-based," speech-restrictive legislation. In light of the evidence, a reasonable person would consider Fly's contact with the victim harassing and intimidating.

3. We reject Fly's claim that, while exercising his right to self-representation, he was denied due process by such events as the denial of bond and an inability, due to the conditions of his incarceration, to adequately prepare for trial. Even when insisting on the right to self-representation, the right to effective assistance of counsel does not entitle a defendant to bail. *Reedman v. State*, 193 Ga. App. 688, 689 (1) (388 SE2d 763) (1989). The record refutes Fly's claim that he was denied the right to prepare for trial. See *Myron v. State*, 248 Ga. 120, 121 (3) (281 SE2d 600) (1981). It demonstrates that the trial court appointed Fly "stand-by counsel," assured his access to the jail's law library, granted his requests for ear plugs, specialized writing tools, office equipment and access to a copier. Notwithstanding Fly's contention to the contrary, the trial court's denial of his request for a personal computer did not rise to the level of a constitutional violation. See id. The record also establishes that Fly knew of the noisy and constrained conditions at the jail when he insisted on representing himself, although he may not have known of the complications involved transporting him to the courthouse to await trial. Id. Assuming, arguendo, that the conditions Fly faced created an error of constitutional magnitude, we are satisfied, in light of the overwhelming evidence against him, that any error was harmless. *Ross v. State*, 195 Ga. App. 624, 627 (4) (394 SE2d 418) (1990).

4. Admission of testimony regarding Fly's conduct prior to the offenses and the enactment of the aggravated stalking statute was not error. Indeed, such evidence was vital to establish the elements of intent and the purpose of harassing and intimidating. Because the indictment addressed conduct which occurred after OCGA § 16-5-91 was enacted, this case lies beyond the ambit of the prohibitions

against ex post facto prosecutions. See *Logan v. State*, 212 Ga. App. 734, 736 (1) (b) (442 SE2d 883) (1994).

5. The trial court did not err in determining that the history of prior contact between the parties did not constitute similar transaction evidence, but showed motive and intent. See *McTaggert v. State*, 225 Ga. App. 359, 365 (2) (483 SE2d 898) (1997). Moreover, notwithstanding that ruling, the record reveals that the court in effect conducted a hearing in which the State satisfied the requisites of USCR 31.3 (B). Id. Thus, the error, if any, was harmless. *Ross*, 195 Ga. App. at 627 (4).

6. The trial court did not abuse its discretion in excluding evidence from Fly's eavesdropping case of tape recordings of conversations he tapped on the victim's telephone. *Martin v. Williams*, 215 Ga. App. 649, 651 (3) (451 SE2d 822) (1994). Notwithstanding Fly's argument to the contrary, we fail to see its relevance to his defense. Compare id.; see Court of Appeals Rule 27 (c) (3) (i) (requiring citations to the record).

7. The trial court did not abuse its discretion by refusing Fly funds for an investigator and expert witnesses. *Wilson v. State*, 250 Ga. 630, 633-634 (2) (b) (300 SE2d 640) (1983). Fly offered no credible reason for needing an investigator. His failure to assert an insanity defense or claim he was guilty but mentally ill undermine his assertion that a psychological expert was needed. Id. The only truly disputed factual issue here was whether Fly's contact with the victim was for the purpose of harassment or intimidation. See *Welch v. State*, 237 Ga. 665, 672 (8) (229 SE2d 390) (1976). Under these circumstances, we fail to see the necessity of an investigator or a psychological expert. Further, in light of the elements of the offense and the overwhelming evidence against Fly, we find the exclusion of purported expert testimony that he was non-violent harmless beyond a reasonable doubt. See *McKinney v. State*, 218 Ga. App. 633, 635 (3) (463 SE2d 136) (1995).

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 14, 1997 —

Thomas Fly, *pro se.*

*J. Tom Morgan, District Attorney, Anne Long, Desiree S. Peagler, Assistant District Attorneys*, for appellee.