A03A1671. CARR v. THE STATE.
(586 SE2d 337)

ELDRIDGE, Judge.

Following a bench trial in the Superior Court of Richmond County, Lyndon Ephariam Carr was found guilty of possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. He appeals and claims that the trial court erred in denying his motion to suppress and that the evidence was insufficient to support the verdict. Because a review of Carr's claims shows them to be without merit, we affirm.

Evidence adduced at the hearing on Carr's motion to suppress shows that a reliable confidential informant ("CI") provided information to Investigator G. Meagher with the Narcotics Division of the Richmond County Sheriff's Office that a man named "Tony Pascal," a man identified as "Jabbar," and other unnamed individuals were selling marijuana and cocaine from the TNT Grocery Store located at 1029 11th Street in Augusta. Meagher testified at the suppression hearing that,

> I had received information that marijuana and cocaine were being sold from this grocery store; that Tony Pascal, who was the owner, was using this location where he and his crew of people were selling drugs out of his store.

Meagher arranged for the CI to make a controlled buy at the TNT Grocery Store under the authority and observation of the Richmond County Sheriff's Office. With government funds, the CI purchased marijuana from an unidentified individual in the store and turned the drugs over to narcotics officers. Thereafter, the officers

placed the TNT Grocery Store under surveillance. They observed individuals enter the store and shortly thereafter exit without groceries, bags, or other goods that would indicate the TNT was a legitimate grocery store or that the individuals had a legitimate purpose for being at the store. Instead, it appeared from the officers' surveillance that the store's sole purpose was as a front for drug sales, and the aim of its "customers" was to purchase drugs. With this information, the officers secured a search warrant for the TNT Grocery Store. The warrant describes the persons involved as,

> Tony Pascal. . . . And a black male known only as Jabbar. . . . And any and all persons reasonably believed to be involved in illegal activity.

Meagher, Sergeant A. Rollins, and three other sheriff's office narcotics officers executed the warrant. Upon the officers' entry into the TNT Grocery Store, Pascal and another unknown male were observed behind the store counter; appellant Carr was seated at a small table in the store. Sergeant Rollins testified that, as he walked toward Carr,

> he [(Carr)] slid away from the table and turned the chair towards us. At that time I took that as a threatening move and I approached him. I asked him to stand up; you could see a bulge inside of his pocket. And when I saw a bulge inside of his pocket, I began a pat down of him.

When asked if he was concerned that Carr was carrying a weapon, Rollins stated, "Absolutely, because I couldn't determine what it [(bulge)] was." Recovered from Carr's left pants pocket were three clear plastic bags containing several small individually packaged bags of marijuana and one plastic bag containing a single 2.5 gram piece of crack cocaine. A set of car keys was also recovered. Testimony established that the single 2.5 gram piece of cocaine found on Carr is inconsistent with the way cocaine is found for "user" purposes, but is consistent with selling or distributing. Testimony also established that the marijuana found on Carr had been repackaged into small "Dime" ($10) bags consistent with street sales packaging.

The trial court denied Carr's motion to suppress, finding that the search of Carr was proper not for purposes of officer safety, but because the totality of the circumstances surrounding the operation of the TNT Grocery Store justified such search; the court reasoned that,

> I mean, it's pretty obvious that it's not any store. And it's pretty obvious that they don't have a lot of customers. And

it's pretty obvious, looking at it [(pictures of TNT Grocery Store)] — here are two or three cans, and here is a radio, it looks like, three or four boxes of soda or something — I guess that's soda. But I mean, it's pretty obvious that that is not a grocery store. And it sure doesn't look like a restaurant. And that's what the evidence is, that really it's a front for a drug operation. And here he [(Carr)] is sitting in there, and they come in, and they've got a warrant, which they say they want to search those two people [(Pascal and "Jabbar")], plus other occupants that they contend — they don't know the names of them but who are selling drugs. I'm going to deny the Motion to Suppress. I think under all the circumstances the search was proper.

*Held*:

1. In his first claim of error, Carr contends the search of his person was not justified on the basis of officer safety and exceeded the scope of a pat-down search. However, as outlined above, the trial court did not decide that Carr's search was proper to ensure officer safety; the trial court determined that the totality of the circumstances surrounding the operation of the grocery store justified the search. As the reviewing court, we must construe the evidence presented at the hearing on the motion to suppress most strongly in favor of upholding the trial court's judgment. "[I]n the absence of evidence of record demanding a finding contrary to the judge's determination, we will not reverse the ruling denying the suppression."[1]

OCGA § 17-5-28 (2) permits the search of an individual not named in a warrant in order to prevent the disposal or concealment of contraband particularly described in the search warrant, here, marijuana and cocaine.

A search to prevent the concealment or disposal of items sought in the warrant is justified if there is a nexus between the person searched and the probable criminal activity that gave rise to the warrant which logically leads to a belief that the person is in possession of a targeted item.[2]

In this case, the trial court specifically found — and the evidence of record supports — that the TNT Grocery Store was not a grocery store, was not a restaurant, and had, in fact, no purpose other than

---

[1] (Citation and punctuation omitted.) *Wright v. State*, 211 Ga. App. 474, 476-477 (3) (440 SE2d 27) (1993).

[2] (Punctuation and footnote omitted.) *Peterson v. State*, 252 Ga. App. 469, 470-471 (1) (556 SE2d 514) (2001).

as a cover for drug operations. Even Pascal, the owner of the "store" who testified at the suppression hearing, did not dispute the evidence that the TNT Grocery Store was simply a front for drug sales.

In addition, the narcotics officers' pre-warrant surveillance showed that individual "customers" who visited the store did not come away with groceries or any other legitimate items, raising the reasonable inference that individuals went to the TNT Grocery Store to take advantage of its *sole* purpose, i.e., the buying and selling of drugs. In fact, during the sentencing hearing, Carr admitted that his own visit to the store was drug-related, albeit he claimed to be there to buy drugs, not distribute them.[3] Further, the information from the CI — verified through the controlled buy — was that unidentified members of Pascal's "crew" also sold drugs out of the store.

In light of the drug-related reason for the store's very existence; the reliable, verified information that persons appeared to come to the store only for drug-related reasons; and the reliable, verified information that a "crew" of people sold drugs from the store, it was not unreasonable for the narcotics officers in the instant case to believe that Carr was at the store for a drug-related purpose and might be concealing such contraband on his person, thereby rendering his search proper under OCGA § 17-5-28 (2).[4] "The search of [Carr's] person was conducted to prevent concealment of contraband sought pursuant to the search warrant, and hence, was lawful."[5]

Notably, the result we reach herein is due to the specific facts of this case. Seldom is a location's *sole* raison d'etre the buying and selling of drugs. Even the talismanic "known drug sale location," which has been used with other factors to authorize police activity ranging from pat-downs to detentions, cannot alone supply the dedication of purpose demonstrated by the verified evidence here. The unique exclusivity of purpose factors present in this case served to create the nexus between Carr and the probable criminal activity that gave rise to the warrant. Thus, a search of Carr's person was both reasonable and justified under OCGA § 17-5-28 (2) to further the aims of the search warrant. The trial court did not err in denying Carr's motion to suppress based upon "all the circumstances" presented.

2. In his final claim of error, Carr's trial attorney, Charles H. S. Lyons III, argues on appeal that he did not actually "stipulate" on the record that the facts adduced at the motion to suppress should be

---

[3] See *Jones v. State*, 187 Ga. App. 421, 422-423 (370 SE2d 784) (1988) (may consider evidence in suppression hearing and at trial in determining legality of search).

[4] It is important to recognize that OCGA § 17-5-28 (2) pertains only to searches conducted pursuant to a warrant; the directives of this Code section may not serve to justify a warrantless search unsupported by probable cause. See, e.g., *State v. Stephens*, 167 Ga. App. 707 (307 SE2d 518) (1983).

[5] *Scott v. State*, 213 Ga. App. 84, 86 (1) (444 SE2d 96) (1994).

considered for purposes of a bench trial; thus, he argues, no evidence was submitted for purposes of a trial, rendering the evidence insufficient to support the verdict. We reject this contention.

It is clear from the record that Lyons put the case to the trial court for a guilt/innocence determination on the evidence presented during the motion to suppress: "Judge, we submit it to the court." Lyons led the prosecution and the trial court to understand that Carr's challenge was to the trial court's ruling on the motion to suppress; after that ruling Lyons argued only sentencing and bond issues.[6] Following the ruling on the motion to suppress and the subsequent verdict, Lyons did not raise objection to the trial court's consideration of the evidence from the motion hearing. Nor did he object on such basis during the sentencing hearing conducted approximately two weeks later.[7] "A party cannot reap the benefit of any error caused or aided by his own trial tactics, procedure or conduct."[8]

As the evidence submitted for the trial court's consideration was sufficient for a rational trier of fact to have found Carr guilty as charged beyond a reasonable doubt, Carr's challenge to the sufficiency of the evidence fails.[9]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 14, 2003 —
RECONSIDERATION DENIED AUGUST 12, 2003 — 

*Charles H. S. Lyons III*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[6] *Scott v. State*, 201 Ga. App. 162 (1) (410 SE2d 362) (1991).

[7] The issue of a bench trial on stipulated facts was mentioned at the sentencing hearing only in relation to the time in which the prosecution served notice of its intent to introduce prior crimes in aggravation of Carr's sentence, i.e., pre-trial or post-trial service.

[8] (Citation and punctuation omitted.) *Roberson v. State*, 228 Ga. App. 416, 420 (3) (491 SE2d 864) (1997).

[9] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).