A09A1928. THORNTON v. HEMPHILL.
(686 SE2d 263)

BLACKBURN, Presiding Judge.

Following an evidentiary hearing, the trial court granted Winifred Hemphill a stalking 12-month protective order,[1] which prohibited Johnny D. Thornton from harassing, contacting, or coming near Hemphill and her family. On appeal, Thornton contends that the evidence was insufficient to support the protective order and that the trial court erred in limiting his testimony and excluding the deposition testimony of his witnesses. Thornton further contends Hemphill's need for the protective order was rendered moot based on the fact that he had not contacted her during the 14 months that passed between her obtaining a stalking ex parte protective order and the hearing. For the reasons set forth below, we affirm.

"The grant or denial of a motion for protective order generally lies within the sound discretion of the court." (Punctuation omitted.) *Anderson v. Mergenhagen*.[2] The standard for obtaining a stalking protective order is proof by preponderance of the evidence. OCGA §§ 16-5-94 (e); 19-13-3 (c). In reviewing the sufficiency of the evidence supporting a stalking protective order, "we do not weigh the evidence or assess witness credibility, and we construe the evidence in favor of the findings of the trier of fact." (Punctuation omitted.) *De Louis v. Sheppard*.[3]

In this matter, the record shows that Hemphill and Thornton had known each other since 1982 and had allegedly dated for several months at that time. In late 2006, after having no contact with each other for over 20 years, Thornton contacted Hemphill, and they renewed their friendship. In addition to renewing their friendship, Thornton also did some work with a contractor, whom Hemphill had

---

[1] See OCGA § 16-5-94 (d).

[2] *Anderson v. Mergenhagen*, 283 Ga. App. 546, 548 (1) (642 SE2d 105) (2007).

[3] *De Louis v. Sheppard*, 277 Ga. App. 768, 769 (627 SE2d 846) (2006).

hired to clear some trees from the grounds of the local cemetery, where she was employed.

In June 2007, Thornton began sending e-mails to Hemphill, in which he would curse at her for various reasons. Over the next few months, Thornton's harassing behavior toward Hemphill escalated as he continued to send her abusive e-mails and would also drive through the cemetery property, asking other employees where Hemphill was when he was unable to find her. Eventually, Hemphill told Thornton to stop coming onto the cemetery property and to stop contacting her. Nevertheless, Thornton continued to drive onto the property and continued to send Hemphill threatening e-mails. In one of these e-mails, Thornton made derogatory comments about Hemphill's appearance and told her that he had recently seen her while she was at the bank although she had not seen him.

On December 10, 2007, Thornton drove onto the cemetery property, parked his car, and walked into a wooded area toward the back of the property. When Thornton refused to respond to Hemphill's inquiry as to why he was there, Hemphill called the police; however, Thornton left the property before the police arrived. Later that day, Thornton sent an e-mail to Hemphill, demanding that she apologize to him for calling the police and further demanding that she cease barring him from the property. In the e-mail, Thornton also threatened to inform Hemphill's husband of an alleged affair that Thornton believed Hemphill was having with one of her employees. Over the next few weeks, Thornton continued sending abusive e-mails to Hemphill. Additionally, on several occasions, he parked at a tire store across the street from the cemetery and yelled at cemetery employees. At some point during this time, despite Hemphill's demands that he stay away from the property, Thornton went to the cemetery when Hemphill was not working and purchased two graves.

As a result of Thornton's behavior, on January 15, 2008, Hemphill petitioned for a stalking ex parte protective order, which the court granted. The court's order enjoined Thornton from approaching within 200 yards of Hemphill and from having any contact with her. It also scheduled an evidentiary hearing on the matter for January 31, 2008. However, for various reasons, the hearing was continued eight times. Each time the case was continued, the trial court ordered that the terms of the January 15, 2008 ex parte protective order would remain in effect.

The evidentiary hearing on Hemphill's petition was finally held on March 18, 2009. At the hearing, Hemphill testified regarding Thornton's harassing conduct toward her and further testified that this conduct caused her to fear for her own safety. At the hearing's conclusion, the court granted Hemphill a stalking 12-month protec-

tive order, which enjoined Thornton from engaging in further harassment of Hemphill, from approaching within 200 yards of her and her immediate family, and from contacting her directly or indirectly. This appeal followed.

1. Thornton contends that the evidence was insufficient, under OCGA § 16-5-90, to support the trial court's grant of the stalking 12-month protective order to Hemphill. We disagree.

OCGA § 16-5-90 (a) (1) provides that "[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." The statute further provides that

> the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

Id.

In this matter, the evidence showed that Thornton contacted Hemphill via abusive e-mails numerous times and placed her under surveillance on several occasions without her consent. Additionally, Thornton ventured onto the cemetery property, where Hemphill worked, at least two times after Hemphill had told him that he was no longer welcome there. The frequency and nature of Thornton's contact and surveillance was such that the trial court could conclude that it was done for the purpose of harassing and intimidating Hemphill. See *Kilby v. State*;[4] *Johnson v. Smith*;[5] *Hall v. State*.[6] Furthermore, there was sufficient evidence that this contact and surveillance put Hemphill in reasonable fear for her safety. See *Kilby*, supra, 289 Ga. App. at 458-459 (1); *Maskivish v. State*;[7] *Hall*, supra, 226 Ga. App. at 383 (b). Accordingly, the evidence was sufficient to support the entry of a stalking 12-month protective order against Thornton, and the trial court did not err in doing so. See *De Louis*, supra, 277 Ga. App. at 771 (1).

2. Thornton contends that the trial court erred in limiting some of his testimony on the ground that it was irrelevant. We disagree.

---

[4] *Kilby v. State*, 289 Ga. App. 457, 458-459 (1) (657 SE2d 567) (2008).

[5] *Johnson v. Smith*, 260 Ga. App. 722 (2) (580 SE2d 674) (2003).

[6] *Hall v. State*, 226 Ga. App. 380, 382-383 (b) (487 SE2d 41) (1997).

[7] *Maskivish v. State*, 276 Ga. App. 701, 703 (1) (624 SE2d 160) (2005).

"A trial court retains broad discretion in determining whether to admit or exclude evidence, and an appellate court generally will not interfere with that discretion absent abuse." *Carlisle v. Abend.*[8] "Specifically, absent an abuse of discretion, we will not interfere with a trial court's determination as to the admission or exclusion of evidence on the grounds of relevancy." (Punctuation omitted.) *Cook v. Covington Credit of Ga.*[9] See *Carlisle*, supra, 288 Ga. App. at 151 (2).

In this matter, the trial court allowed Thornton considerable leeway in his testimony during the evidentiary hearing. In fact, among other things, the court permitted Thornton to testify about his alleged romantic relationship with Hemphill, which occurred more than 20 years before the incidents at issue in the case, and also permitted him to testify that Hemphill allegedly became pregnant during the relationship but that she terminated the pregnancy. Nevertheless, Thornton contends that the trial court erred when it sustained an objection and precluded him from further testifying about a connection between Hemphill's college-age daughter and the termination of Hemphill's pregnancy, on the ground that the testimony was irrelevant. However, "[t]he trial court has wide discretion to admit testimony of questionable relevance." (Punctuation omitted.) *Collins & Assoc. v. Henry County Water & Sewerage Auth.*[10] Here, we cannot say that the trial court abused its discretion in excluding testimony regarding events that occurred more than 20 years before the events at issue in this case. Moreover, even if the trial court erroneously excluded this testimony, Thornton has failed to make a proffer of the excluded testimony and has failed to demonstrate how the excluded testimony would have been beneficial to his defense. See *McMillan v. Siver.*[11] Accordingly, Thornton has not shown the requisite harm for reversal. See id.

3. Thornton contends that the trial court erred in excluding the deposition testimony of two of his witnesses. This contention is without merit.

During the evidentiary hearing, Thornton's counsel sought to introduce into evidence the depositions of two of Hemphill's cemetery employees. Thornton's counsel proffered that the two employees had testified that they worked at the cemetery for Hemphill at the same time that Thornton had done some work there but had not witnessed any problems between Hemphill and Thornton. After

---

[8] *Carlisle v. Abend*, 288 Ga. App. 150, 151 (2) (653 SE2d 388) (2007).

[9] *Cook v. Covington Credit of Ga.*, 290 Ga. App. 825, 826 (1) (660 SE2d 855) (2008).

[10] *Collins & Assoc. v. Henry County Water & Sewerage Auth.*, 290 Ga. App. 782, 784 (2) (661 SE2d 568) (2008).

[11] *McMillan v. Siver*, 233 Ga. App. 350, 352-353 (504 SE2d 208) (1998).

Thornton's counsel attempted to tender the depositions into evidence, the trial court responded that the proper procedure for making the depositions part of the record was to file them with the court clerk. When Thornton's counsel again requested that the trial court review the depositions, the court responded that it would take counsel's word as to the content of the witnesses' testimony but that it did not believe that the fact that other cemetery employees were unaware of any problems between Hemphill and Thornton was relevant.

Pretermitting whether the trial court erred by not allowing Thornton to tender the depositions into evidence, or whether the trial court's statement was more accurately an indication of how it intended to weigh the evidence, "[o]n appeal, a party must show harm as well as error." (Punctuation omitted.) *Morton v. Horace Mann Ins. Co.*[12] See *McMillan*, supra, 233 Ga. App. at 352-353. Here, Thornton has not shown that "such alleged error would have changed the outcome of the hearing, and therefore has failed to show that it was harmful." *In the Interest of J. A.*[13] See *Morton*, supra, 282 Ga. App. at 740 (4). Accordingly, the trial court's judgment does not require reversal.

4. Thornton further contends that the trial court erred in granting the stalking 12-month protective order because Hemphill's need for the protective order was rendered moot. Specifically, he argues that because he had not contacted or approached Hemphill during the 14 months between the time she obtained the stalking ex parte protective order and the time of the evidentiary hearing, the 12-month protective order was unnecessary. This contention is without merit.

Thornton is unable to cite to any authority in support of his contention that his 14-month compliance with the stalking ex parte protective order, which was granted without a hearing by a showing of probable cause,[14] rendered the stalking 12-month protective order moot. Indeed, "a case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights. . . ." *Collins v. Lombard Corp.*[15] At the time the trial court heard this matter, the fact that Thornton had not violated the ex parte order did not render Hemphill's petition for a stalking 12-month protective order an abstract question.

Furthermore, the hearing for this matter was continued on eight

---

[12] *Morton v. Horace Mann Ins. Co.*, 282 Ga. App. 734, 740 (4) (639 SE2d 352) (2006).

[13] *In the Interest of J. A.*, 298 Ga. App. 11, 16 (3) (679 SE2d 52) (2009).

[14] See OCGA § 16-5-94 (c).

[15] *Collins v. Lombard Corp.*, 270 Ga. 120, 121 (1) (508 SE2d 653) (1998).

separate occasions. Three of those continuances were the result of consent orders. One continuance was ordered based on Thornton's counsel being sick and unable to attend, and another was ordered to allow Thornton to compel the attendance of subpoenaed witnesses. "A party cannot reap the benefit of any error caused or aided by his own trial tactics, procedure or conduct." (Punctuation omitted.) *Carr v. State*.[16] While the ordering of continuances in this matter was not error, Thornton is nevertheless arguing that he should benefit from a delay that he, in large part, caused. Thus, his argument is without merit. Accordingly, the stalking 12-month protective order was not rendered moot by Thornton's compliance with the ex parte order.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED SEPTEMBER 22, 2009 —
RECONSIDERATION DENIED OCTOBER 28, 2009

*Fears, Lawrence & Turner, William H. Turner, Jr., Douglas R. Ballard, Jr.*, for appellant.

Winifred Hemphill, *pro se.*

---

[16] *Carr v. State*, 262 Ga. App. 676, 680 (2) (586 SE2d 337) (2003).