294 Ga. 890
FINAL COPY

S13A1650. DANFORTH v. APPLE INC.

NAHMIAS, Justice.

In 2000, the General Assembly enacted legislation to assist employers in protecting their workplaces and employees from potential violence. See Ga. L. 2000, p. 1081, § 1. The statute was codified as OCGA § 34-1-7, which says:

> Any employer whose employee has suffered unlawful violence or a credible threat of violence from any individual, which can reasonably be construed to have been carried out at the employee's workplace, may seek a temporary restraining order and an injunction on behalf of the employer prohibiting further unlawful violence or threats of violence by that individual at the employee's workplace or while the employee is acting within the course and scope of employment with the employer. . . .

OCGA § 34-1-7 (b).[1]

---

[1] OCGA § 34-1-7 (a) (4) defines "unlawful violence" to include "stalking, as prohibited by Code Section . . . 16-5-90." OCGA § 16-5-90 in turn defines stalking as when a person:

> follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term "contact" shall mean any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device; and the place or places that contact . . . is deemed to occur shall be the place or places where such communication is received. . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

OCGA § 16-5-90 (a) (1). "Credible threat of violence" is defined in OCGA § 34-1-7 (a) (2) to mean "a knowing and willful statement or course of conduct which would cause a reasonable person to believe that he or she is under threat of death or serious bodily injury, and which is intended to, and which actually causes, a person to believe that he or she is under threat of death or serious bodily

In late 2012, appellee Apple Inc. petitioned for a temporary restraining order (TRO) and an injunction under OCGA § 34-1-7 against appellant Catherine Danforth, a former employee who had worked at the Apple store at Lenox Square Mall in Atlanta. After a TRO was entered pursuant to OCGA § 34-1-7 (d), the trial court held an evidentiary hearing on the petition for an injunction pursuant to OCGA § 34-1-7 (e).[2] In an order entered on January 17, 2013, the trial court found by clear and convincing evidence that Danforth had a history of mental illness, which included a prior suicide attempt and hospitalization in a mental health facility within the last five years and on other occasions; that Danforth was not taking medication; that she had exhibited behavior that caused Apple's employees to reasonably fear for their safety; that she had continued to contact Apple employees following her termination even

injury, and which serves no legitimate purpose."

[2] OCGA § 34-1-7 (e) says:
> Within ten days of filing of the petition under this Code section or as soon as practical thereafter, but in no case later than 30 days after the filing of the petition, a hearing shall be held on the petition for the injunction.... The respondent may file a response which explains, excuses, justifies, or denies the alleged unlawful violence or credible threat of violence or may file a cross-complaint under this Code section. At the hearing, the judge shall receive any testimony that is relevant and may make an independent inquiry. If the judge finds by clear and convincing evidence that the respondent engaged in unlawful violence or made a credible threat of violence, an injunction shall issue prohibiting further unlawful violence or threats of violence at the employee's workplace or while the employee is acting within the course and scope of employment with the employer....

after being told not to do so; that her reasons for contacting the Apple employees were work-related and the majority of her conduct toward them occurred during the course of their employment; that she posed an immediate threat of violence to the employees; and that her conduct established a pattern of harassing and intimidating behavior toward the Apple employees that constituted stalking under OCGA § 16-5-90.

The court entered an injunction barring Danforth, for a period of three years, from: (1) entering any Apple store, office, or facility, including but not limited to the Lenox Square store, but allowing her to order Apple products online for delivery at some other location and excluding legally required appearances that are arranged in advance; (2) knowingly being within 500 feet of any Apple employee who works at the Lenox Square Mall store, specifying three employees by name, again with an exception for legally required appearances; and (3) contacting any Apple employee, directly or indirectly, by any means of communication including social media, again specifying the three employees by name, except through Apple's outside counsel, whom Danforth is allowed to contact only by e-mail, telephone, or regular mail.

Danforth filed a timely notice of appeal to this Court.[3]  Danforth, who appeared pro se in the trial court, is represented by counsel on appeal.  She argues that the evidence presented to the trial court was insufficient to support an injunction under OCGA § 34-1-7 and that the injunction that was issued is overbroad.  As explained below, the evidence was legally sufficient to support the issuance of an injunction under OCGA § 34-1-7.  However, Apple sought relief under OCGA § 34-1-7 alone, and the injunction exceeds the scope authorized by that statute to some extent.  Accordingly, we affirm the injunction order in part and vacate it in part, and we remand the case to the trial court for the entry of an injunction fully consistent with OCGA § 34-1-7.

1.      Danforth argues first that the evidence presented to the trial court was insufficient to support the issuance of an injunction under OCGA § 34-1-7. We disagree.

---

[3] Jurisdiction is proper in this Court because the appeal challenges not just the legal basis for the injunctive relief but also its proper scope.  See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2) (giving this Court general appellate jurisdiction over "[a]ll equity cases"); Reeves v. Newman, 287 Ga. 317, 318 (695 SE2d 626) (2010) ("'If there is no substantive issue regarding the propriety of the equitable relief granted or rejected, then the appeal does not lie in this Court.'" (citation omitted)); Warren v. Bd. of Regents of Univ. System of Ga., 272 Ga. 142, 145 (527 SE2d 563) (2000) ("For a matter to come within this Court's equity jurisdiction, the lower court must have rendered a judgment based upon equitable principles, and that decision must be the primary issue on appeal.").

3

(a)    Georgia's appellate courts have not previously construed OCGA § 34-1-7, which establishes clear and convincing evidence as the standard of proof for the issuance of an injunction to protect an employer's workplace and employees. See OCGA § 34-1-7 (e). However, this Court has held in other contexts where the standard of proof was clear and convincing evidence that appellate review of the sufficiency of the evidence to support a final judgment is limited to deciding whether any rational trier of fact could have found by clear and convincing evidence that the statutory conditions were satisfied. See, e.g., In the Interest of A. C., 285 Ga. 829, 835-836 (686 SE2d 635) (2009) (termination of parental rights); Smith v. Srinivasa, 269 Ga. 736, 737-738 (506 SE2d 111) (1998) (rebuttal of former statutory presumption regarding revocation of a will). We have also recognized that even under this heightened standard of proof, an appellate court must defer to the factfinder's credibility determinations, weighing of the evidence, and resolution of disputed factual issues. See In the Interest of A. C., 285 Ga. at 836. See also Johnson v. Omondi, 294 Ga. 74, 77 (751 SE2d 288) (2013) (explaining that these functions belong to the trier of fact). Thus, the reviewing court must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the

judgment. See <u>Srinivasa</u>, 269 Ga. at 737-738. We hold that this standard of review applies to evidentiary challenges to an injunction issued under OCGA § 34-1-7.

(b) So viewed, the evidence presented to the trial court at the injunction hearing showed the following. In August 2011, Apple hired Danforth to work at its retail store in Lenox Square Mall. Danforth had been previously diagnosed with various mental disorders, including borderline personality disorder, bipolar disorder, and depression. She had been hospitalized for mental illness on several occasions, including within the past five years. In addition, Danforth was indicted in 2009 for aggravated stalking and pled guilty to criminal trespass; she was ordered to have no contact with Dr. John Horton and not to come on the premises of any Emory hospital facility for a year.

On August 13, 2012, Apple terminated Danforth's employment for performance issues, including her increasingly frequent outbursts in front of other Apple employees and customers. During these outbursts, Danforth would cry, raise her voice, and visibly shake. In addition, she had hit a desk and thrown a pen, and she once told a supervisor, "I am f**king sick and tired of you." Danforth had talked at work about hurting herself and about a prior

suicide attempt. On one occasion, she wrote a note to a co-worker saying that she was having suicidal thoughts again, and when management was unable to reach her or her emergency contact, Apple called the police to have them check on her welfare.

After her termination, Danforth frequently contacted her former co-workers, ignoring their repeated requests that she stop. Danforth admitted that she e-mailed Apple employees "every day." Danforth came to the Apple store at Lenox Square and threatened to come to the store after being told not to do so, including an incident where store manager Eugene Heggan found handwritten notes from Danforth to employees in the management office of the store, which is an area not accessible to the public. Danforth left 17 emotionally charged and angry voicemails concerning the reasons for her termination for Heggan, who has four young children, while he was on a family vacation. Danforth sent another Apple employee, senior manager Jacob Campbell, emotional emails and text messages at all hours of the day and night, saying in one email, "You hurt me very badly and I can't help but think that some of it was intentional." In response to this e-mail, Campbell requested that Danforth no longer contact him. In mid-October 2012, Campbell saw Danforth looking

6

at him through the side mirror of her car when he parked in his usual space in the Lenox Square parking lot.

In response to Danforth's unwanted communications, members of Apple's management, corporate, legal, loss prevention, human resources, and employee relations teams assessed whether Danforth posed a threat to the company's employees and concluded that she did. On October 22, 2012, after the threat assessment, a human resources official contacted Danforth and told her to stop communicating with Apple employees, but Danforth did not comply. On October 26 at 9:56 p.m., she left a voicemail for former co-worker Adam Lane, saying, "I have something to tell you . . . I don't really know why I called . . . you will find out soon enough," and in a text message to Lane the next day she wrote, "I'm sorry Adam. But I'm doing what I have to do." Around this time, Danforth's Facebook profile picture, which showed her looking through the sights of a hunting rifle, was brought to Heggan's attention, and Heggan learned that Danforth previously talked to another manager about shooting guns, even though she had been hospitalized for mental illness and she believed that she could not obtain a gun permit.

Due to Danforth's actions, Apple employed Fulton County Sheriff's

Department officers as private security. On November 13, 2012, a member of Apple's loss prevention team e-mailed Danforth, stating that Apple viewed her conduct as "highly disruptive and harassing" and telling her not to come back to the Lenox Square store. Despite this e-mail, Danforth placed an order for pickup at the store, which Apple cancelled. On November 15, Danforth, acting pro se, filed a federal lawsuit against Apple and several of her former supervisors and managers, alleging that Apple violated the Americans with Disabilities Act by failing to accommodate her mental disability and by terminating her employment due to her disability. On November 20, Campbell saw Danforth a second time in the area of the Lenox Square parking lot used by most Apple store employees.

On November 21, 2012, Apple filed a petition in the Superior Court of Fulton County seeking a TRO and an injunction against Danforth under OCGA § 34-1-7 on the ground that, after Apple terminated her employment, Danforth "engaged in an escalating scheme of threatening and harassing stalking primarily directed at three Lenox store management employees" — Heggan, Campbell, and Lane — which caused them "to be gravely concerned for their safety." That same day, the Fulton County court issued a TRO prohibiting

Danforth from contacting or otherwise harassing Apple employees. On November 26, after Apple tried to serve the TRO and discovered that Danforth actually resided in Cobb County, the Fulton County court transferred the case to the Superior Court of Cobb County ("trial court"). See OCGA § 34-1-7 (c) (1) (prescribing venue for OCGA § 34-1-7 petitions).

Despite the TRO, Danforth continued to contact Apple's employees by copying them on e-mails that she sent to Apple's outside legal counsel. In one e-mail Danforth wrote, "I want to let you know that you do your client no favors by intentionally antagonizing me and trying to make me angry." In an e-mail sent on December 12, she wrote, "I did not intend to see Mr. Campbell today. That was an accident. I was there for other reasons. He can rest assured that I was not stalking or watching him." Campbell, however, did not see Danforth that day. Danforth also continued to contact Apple employees through text messages and e-mails. Apple then filed an emergency motion for protective order in the federal lawsuit to prevent Danforth from contacting the individual defendants, which the federal court granted on December 18, 2012.

(c)     At the injunction hearing on January 16, 2013, to establish the facts discussed in the last subdivision, Apple presented testimony from Heggan and

9

Campbell along with numerous documents. Danforth also testified, and she cried and was otherwise emotional on the witness stand and while cross-examining Apple's witnesses; she also spent several minutes rambling about guns. At the conclusion of the hearing, which lasted about three hours, the court said, "I find that [Danforth] has exhibited, both from the testimony of the witnesses and the Court's own observations of her demeanor in the courtroom, behavior that would lead a reasonable person to be fearful of her." On January 17, 2013, the trial court entered the injunction order now under review.

When viewed in the light most favorable to that judgment, the evidence presented at the injunction hearing and summarized above was sufficient to authorize a rational trier of fact to find by clear and convincing evidence that Danforth engaged in "unlawful violence" against Apple employees by stalking them, "which can reasonably be construed to have been carried out at the employee[s'] workplace." OCGA § 34-1-7 (b). Although Danforth argues that her individual contacts with Apple employees, while perhaps unwanted, were not harassing or intimidating, the trial court was entitled to consider the totality of the circumstances bearing on the intent of Danforth's acts and their effects on Apple's employees, to make credibility determinations in favor of Apple's

10

witnesses and against Danforth, and to resolve other factual disputes and make other reasonable inferences in Apple's favor.[4] Accordingly, the trial court was authorized to grant Apple an injunction under OCGA § 34-1-7 (e) prohibiting Danforth from engaging in further unlawful violence against Apple's employees at the workplace or while acting within the course and scope of their employment.[5]

2.  Danforth next contends that, even if the evidence was sufficient to support the issuance of an injunction, the actual injunction the trial court ordered

---

[4] See, e.g., Thornton v. Hemphill, 300 Ga. App. 647, 649 (686 SE2d 263) (2009) (upholding a protective order based on stalking where the defendant, after the plaintiff asked him to stop, sent her numerous abusive e-mails, placed her under surveillance on several occasions, and visited her workplace at least twice, because "[t]he frequency and nature of [the defendant's] contact and surveillance was such that the trial court could conclude that it was done for the purpose of harassing and intimidating" the plaintiff); Patterson v. State, 284 Ga. App. 780, 784 (645 SE2d 38) (2007) (affirming aggravated stalking convictions over the defendant's argument that he did not intend to harass or intimidate the victim when he "continued to call the victim, send her cards, show up at her home, and leave her notes," explaining that "'[e]ven though his comments to her were not overtly threatening, given the history of [his] persistent, disturbing actions, and his refusal to leave the victim alone, a rational jury could have found beyond a reasonable doubt that such acts were intended to harass and intimidate and placed the victim in fear for her safety'" (citation omitted)); Hall v. State, 226 Ga. App. 380, 382-383 (487 SE2d 41) (1997) (affirming stalking conviction where the defendant followed the victim in his car and on foot several times, sent things to her place of employment, mailed her numerous greeting cards, left gifts for her at her doorstep, and loitered around her apartment complex).

[5] Because the evidence of "unlawful violence" supports the issuance of an injunction in this case, we need not address Apple's contention that the evidence also established a "credible threat of violence," as that phrase is defined in OCGA § 34-1-7 (a) (2), that would also support an injunction.

11

exceeds the scope authorized by OCGA § 34-1-7. See <u>Bd. of Commrs. of Spalding County v. Stewart</u>, 284 Ga. 573, 575 (668 SE2d 644) (2008) (explaining that an injunction must be tailored to the facts and law of the particular case). The injunctions authorized by OCGA § 34-1-7 (e) are limited to "prohibiting further unlawful violence or threats of violence *at the employee's workplace or while the employee is acting within the course and scope of employment with the employer*." (Emphasis added.) The evidence in this case demonstrates that Danforth poses a threat to Apple as an employer and to its employees. The injunction first bars Danforth from entering any Apple workplace — any store, office, or facility — and thus comes fairly within the scope authorized by OCGA § 34-1-7 (e). We note that this provision of the injunction provides an exception for legally required appearances and also allows Danforth to purchase Apple products if done online for delivery away from an Apple workplace.

The injunction's second restriction prohibits Danforth from "knowingly be[ing] within **500 feet** of any of [Apple's] employees who work at its Lenox Square Mall store," and the third restriction requires Danforth to have

> **no contact**, directly or indirectly, with any of [Apple's] employees

12

> . . . by any means, including, but not limited to, the use of the public or private mails, telephone, scan, social media (including, but not limited to, Facebook, MySpace, LinkedIn, etc.), facsimile, e-mail (personal or business), text message, instant message, iMessage, voicemail, courier, or handwritten notes.

(Emphasis in original.) The second restriction is limited somewhat in that it applies only to employees of the specific Apple store where Danforth worked and whose personnel have borne the brunt of her unlawful violence, and it requires knowing conduct by Danforth to violate the injunction. Thus, if Danforth inadvertently finds herself at a social event with an employee of her former store, she will not violate the injunction as long as she leaves immediately upon realizing that the Apple employee is within 500 feet. The second restriction also excludes legally required appearances. The third restriction lacks even these limitations; thus, Danforth could violate the injunction merely by communicating through social media with a person anywhere in the world who happens to be an Apple employee, even if Danforth is unaware of that person's connection to Apple and the communication has nothing to do with Apple or her unhappy relationship with Apple.

OCGA § 34-1-7 gives employers standing to obtain protective orders based on unlawful violence and credible threats of violence directed against

13

their employees — but only with respect to those persons *as employees*. Thus, the injunction that is supported by the evidence in this case may extend only as far as Apple's workplace and Apple's employees while "acting within the course and scope of [their] employment with [their] employer." OCGA § 34-1-7 (e). That is a potentially very broad scope — broad enough to extend to any contact that Danforth knowingly has with Apple employees that has any connection to their employment, including, for example, communications sent to their work e-mail addresses or to Apple websites or social media pages, or other contacts that the court may reasonably infer have something to do with persons because of their status as Apple employees. To the extent, however, that the second and third restrictions in the injunction apply on their face even to contacts that Danforth has with persons who happen to be employed by Apple, for reasons that have nothing to do with Apple or their employment with that company, the injunction exceeds the scope authorized by OCGA § 34-1-7.

Accordingly, we affirm the injunction order to the extent that the trial court ruled that the evidence supports an injunction under OCGA § 34-1-7, but we must vacate the injunction and remand the case to the trial court for the entry of a new injunction that is fully consistent with OCGA § 34-1-7 (e).

14

Judgment affirmed in part, vacated in part, and case remanded with direction. All the Justices concur.


Decided March 28, 2014.

Equity. Cobb Superior Court. Before Judge Poole.

Parks, Chesin & Walbert, Regan E. Keebaugh, Andrew Y. Coffman, for appellant.

Littler Mendelson, L. Traywick Duffie, Nicolette J. Lee, for appellee.

15