**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2005
THOMAS K. KAHN
CLERK

No. 04-14024
Non-Argument Calendar

_____

D.C. Docket No. 02-00543-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE C. ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 10, 2005)

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Willie C. Anderson appeals his conviction and 188-month sentence for

possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

On appeal, Anderson challenges the district court's denial of his motion to

suppress evidence, as well as the constitutionality of his sentence. Although we affirm the district court's evidentiary ruling, Anderon's preserved <u>Booker</u> challenge requires us to vacate his sentence and remand for resentencing.

## BACKGROUND

Prior to trial, Anderson had moved to suppress evidence obtained in connection with a search incident to his arrest. At the suppression hearing, Officer Chad Alexander of the Atlanta Police Department testified he and his partner were flagged down by Bobby Bell, who then told the officers that: (i) a black male, wearing a purple coat and blue jeans, had burglarized the home Bell and his wife were restoring and was walking towards Officer Alexander's location; (ii) Bell had followed this individual (Anderson) after he had left Bell's house; and (iii) Bell saw Anderson recover a handgun from his left-front pant pocket and place it in his front coat pocket. Officer Alexander further testified that: (i) after Bell made these statements, Officer Alexander witnessed a black male wearing a purple coat and blue jeans approaching them; (ii) Bell identified that individual as the perpetrator, saying, "that's him." Officer Alexander stated that he and his partner then approached Anderson, who had his hands in his pockets. The police ordered Anderson to remove his hands from his pockets, and because of his reluctance to do so, they ordered him to his knees. Alexander then conducted a "quick frisk" of

Anderson's person, during which he felt a hard object with the feel and shape of a handgun. The officers removed the item, which proved to be a loaded semiautomatic weapon. The officers then placed Anderson under arrest.

To the extent that Alexander's testimony conflicted with Bell's own testimony, the magistrate expressly credited Alexander's testimony, finding that Bell's equivocations and lapses of memory rendered him a less credible witness. Based on Alexander's testimony, the magistrate's report concluded that the officers had probable cause to arrest Alexander and to conduct a lawful warrantless search incident to the arrest. In the alternative, the magistrate concluded that the officers conducted a lawful "stop and frisk," the results of which then gave them probable cause to arrest Anderson. The magistrate accordingly recommended a denial of Anderson's suppression motion. The district court adopted the magistrate's report.

Following a stipulated bench trial, the district court found Anderson guilty of violating 18 U.S.C. § 922 (g)(1) (2005). At sentencing, the district court found that Anderson had three prior violent felony convictions, subjecting him to the minimum fifteen-year sentence mandated by 18 U.S.C. § 924(e). The district court granted an additional enhancement beyond the fifteen-year minimum, finding by a

preponderance of the evidence that Anderson was using the weapon in connection with burgling Bell's home – a crime of which Anderson was never convicted.

Anderson objected to the court's enhancements based on <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004).  The district court overruled Anderson's <u>Blakely</u> objections, relying on our decision in <u>United States v. Sanchez</u>, 269 F.3d 1250 (11th Cir. 2001), which held that the principle embodied in <u>Blakely</u> had no application to the U.S. Sentencing Guidelines.  After the district court granted an offense-level reduction for acceptance of responsibility, the guidelines range was 188 to 235 months.  The district court sentenced Anderson to 188 months in prison, the minimum sentence permissible under the guidelines, but eight months above the statutory minimum sentence prescribed by § 924(e).  Anderson appeals.

## STANDARDS OF REVIEW

"This court reviews a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts <u>de novo</u>."  <u>United States v. Desir</u>, 257 F.3d 1233, 1235-36 (11th Cir. 2001).

Because Anderson made his <u>Blakely</u> objection before the district court, preserving it for appellate review, we review his sentence de novo, but will reverse

and remand only for harmful error. United States v. Riley, 250 F.3d 1303, 1307 n.5 (11th Cir. 2001).

## SUPPRESSION OF THE EVIDENCE

As a threshold matter, Anderson takes issue with the district court's findings of fact. Specifically, Anderson points to the conflict between testimony given by Alexander and that given by Bell, contending that Bell's testimony is more credible than Officer Alexander's testimony. However, because the trier of fact remains in a superior position to judge a witness's demeanor and credibility, we defer to a magistrate's credibility determination in the face of conflicting testimony unless his understanding of the facts appears to be "unbelievable." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). Where the record of Bell's testimony included memory lapses and vacillations in testimony, we certainly cannot say that the magistrate's version of the facts, which credits Alexander's testimony, is incredible. Under that version of the facts, it becomes clear that Alexander's search was permissible.

Consistent with the Fourth and Fourteenth Amendments, a police officer may conduct a brief, investigatory stop without a warrant when he or she has a "reasonable, articulable suspicion" that criminal activity is afoot. Illinois v. Wardlaw, 528 U.S. 119, 123 (2000). "Reasonable suspicion" is a less demanding

5

standard than probable cause and requires considerably less than a preponderance of the evidence. United States v. Sokolow, 490 U.S. 1, 7 (1989). However, the officer must be able to articulate a level of objective justification that rises above mere inchoate suspicion. Wardlaw, 528 U.S. at 123, citing Terry v. Ohio, 391 U.S. 1, 27 (1968). Where such justification exists, the officer may conduct a limited warrant-less search of an individual's outer clothing in an attempt to discover weapons. Terry, 391 U.S. at 30.

In this case, Alexander clearly possessed "reasonable suspicion" to conduct a Terry frisk of Anderson. Bell had flagged down Alexander and informed him that a black male individual wearing a purple coat and blue jeans had burglarized the home he and his wife were restoring, was carrying a concealed gun, and was traveling towards their location. After Bell relayed this information to Alexander, they both witnessed a black male wearing a purple coat and blue jeans coming towards them. Bell identified the individual by saying, "that's him." When Alexander approached, Anderson was resistant to remove his hands from his front pockets. Taken together, this information reasonably suggested to Alexander that Anderson had just committed a burglary and was armed with a concealed weapon. Such information is objectively sufficient to rise to the level of "reasonable suspicion" for a Terry frisk. Though Anderson relies on Florida v. J.L., 529 U.S.

6

266, 270 (2000), that case involved information received via telephone from an anonymous informant – an "unknown caller, at an unknown location." Bell cannot be categorized as an anonymous informant: he personally flagged down Alexander and directly conveyed the information about Anderson. J.L. and its insistence on indicia of an *anonymous* informer's reliability are inapposite.

We thus agree with the district court that Alexander possessed reasonable suspicion of criminal activity, and conducted a permissible Terry frisk on Anderson.[1] Once the Terry frisk revealed the concealed weapon of which Bell had warned, Alexander had probable cause to arrest Anderson and to conduct a more thorough search incident to that arrest.

## SENTENCING

"Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." United States v. Booker, 125 S.Ct. 738, 756 (2005). Following Booker, the sentencing guidelines are advisory, though a district court

---

[1]Because we conclude that Alexander initially had reasonable suspicion to conduct a Terry frisk, and upon discovery of the concealed weapon possessed probable cause to arrest, we need not reach the district court's alternative holding that Alexander had probable cause to arrest Anderson prior to frisking his person.

must still consult them along with the factors found at 18 U.S.C. § 3553(a). Id. at 764-65. However, Booker neither disturbs a district court's ability to rely on prior convictions to enhance a defendant's sentence, United States v. Orduno-Mireles, 04-12630, 2005 U.S. App. LEXIS 5442 at *6 (11th Cir. April 6, 2005), nor does Booker enable a district court to employ its discretion to impose a sentence below the prescribed statutory minimum. United States v. Shelton, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005).

We thus reject Anderson's initial contention that Booker prevented the district court – rather than a jury – from finding his three prior felony convictions. Booker itself makes clear that a district court's fact-finding as to prior convictions works no Sixth Amendment violation. Booker, 125 S.Ct. at 756; see also, Orduno-Mireles, 2005 U.S. App. LEXIS 5442 at *6. Thus, there is no constitutional Booker error in the district court's findings as to Anderson's prior convictions, nor its consequential application of the § 924(e)(1) statutory minimum which resulted. Moreover, there can be no non-constitutional "statutory" Booker error in the district court's application of § 924(e)(1), because Booker's excise of the statutory provision that made the guidelines mandatory left undisturbed statutory minimums. Shelton, 400 F.3d at 1333 n.10.

8

We likewise find no merit in Anderson's argument that Booker requires a jury to find that the predicate convictions qualified as "violent felonies" within the meaning of 18 U.S.C. § 924(e)(2)(b).[2] To the contrary, the question of whether the prior felonies qualify as "violent" remains a matter of law to be determined by the court. This is made clear by the Supreme Court's recent decision in Shepard v. United States, 125 S.Ct. 1254 (2005). Shepard reaffirmed that "a *court* sentencing under [§ 924(e)] could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction" qualified as a violent felony. Shepard, 125 S.Ct. at 1257 (emphasis added). While Shepard thus limited the categories of material a court could consider in making its "violent felony" determination, it in no way unsettled a court's power to pass on this matter of law or even suggested it was appropriate for jury consideration. Accord United States v. Schlifer, No. 04-3398, 2005 U.S. App. LEXIS 5613 at *7 (7th Cir. April 7, 2005) (refusing to "parse out the recidivism inquiry" where appellant argued that judge's findings as to whether prior convictions were for crimes of violence violated Sixth Amendment); United States v. Marcussen, No, 04-2935, 2005 U.S.

---

[2] Anderson does not raise his claim, made below, that the predicate aggravated stalking conviction does not satisfy the definition of a "violent felony" for § 924 purposes. Nonetheless we note that the Georgia courts have interpreted the aggravated stalking offense (Ga. Code. Ann. § 16-5-91(a)) to require "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm." See Fly v. State, 494 S.E.2d 95, 97 (Ga. Ct. App. 1997).

App. LEXIS 5877 at *5 (8th Cir. April 11, 2005) (holding that Shepard "lends further support to the rule that the *sentencing court, not a jury*, must determine whether prior convictions qualify as violent felonies") (emphasis added).

Nonetheless, the district court did engage in fact-finding beyond its conclusion as to Anderson's prior convictions and their status as "violent felonies" under § 924(e)(2)(b). Specifically, the district court found by a preponderance of the evidence that Anderson committed burglary of Bell's residence prior to his arrest, and used the concealed firearm found on his person in connection with that burglary. Though the Georgia courts never convicted Anderson of the burglary offense, the district court relied on testimony presented to the magistrate at the suppression hearing to reach its conclusion as to the burglary and the weapon's relation thereto. The district court then used those findings to enhance Anderson's offense level by four points pursuant to § 2K2.1(b)(5) of the guidelines. In so doing, the district court clearly violated Anderson's Sixth Amendment rights under Booker. Because Anderson's objections below preserved this issue, and where the government has not even argued that this Booker error was harmless, we vacate Anderson's sentence and remand for re-sentencing.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**