### A10A1339. GARNSEY v. BUICE.
(703 SE2d 28)

PHIPPS, Presiding Judge.

Zachary Buice obtained a 12-month protective order against his neighbor, Tom Garnsey, whom Buice contended was stalking him and his family. On appeal, Garnsey challenges the issuance of the protective order and specific terms therein. For reasons that follow, we affirm.

OCGA § 16-5-94 (d) authorizes a court to grant a protective order "to bring about a cessation of conduct constituting stalking." Such an order may, among other things, "[d]irect a party to refrain from such conduct" or "[o]rder a party to refrain from harassing or interfering with the other."[1] We review the grant or denial of a motion for protective order for abuse of discretion.[2]

1. Garnsey contends that there was insufficient evidence to support the issuance of the protective order. We disagree.

To obtain a protective order based on stalking, the petitioner

---

[1] OCGA § 16-5-94 (d) (1), (2).
[2] *Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007).

must establish the elements of that offense by a preponderance of the evidence.[3] Stalking is defined as "follow[ing], plac[ing] under surveillance, or contact[ing] another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."[4]

> "[H]arassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.[5]

In reviewing the sufficiency of the evidence, we construe the evidence in favor of the findings of the trier of fact.[6] So viewed, the evidence showed that Buice and Garnsey were neighbors with abutting properties. Over a period of more than one year, beginning shortly after Buice and his wife moved into a house on Buice's property, Garnsey engaged in behaviors that the Buices viewed to be harassing. These behaviors included: shining a spotlight at night onto the back side of the Buices' house and into their bedroom window; shooting a pistol into the air from a location behind the Buices' bedroom shortly after they brought their newborn daughter home from the hospital; driving past the Buices' house in a golf cart, yelling obscenities, while Buice and his daughter were in the yard; driving past the Buices' house at night and honking a horn; stopping a golf cart or a tractor in front of the Buices' house and staring at the Buices; "sitting in" and blocking access to the Buices' driveway; installing on a tree a camera that took pictures of the Buices' driveway; installing posts and a mailbox at the end of the Buices' driveway that made it difficult for them to exit the driveway and could impede emergency responders from entering the Buices' property; attempting to "run [Buice] off the road" in a golf cart; and coming within 100 yards of the Buices in violation of the terms of a temporary protective order.

This evidence supported a determination that Garnsey had followed the Buices or placed them under surveillance without their consent, and the pattern, frequency, and nature of Garnsey's conduct

---

[3] *Sinclair v. Daly*, 295 Ga. App. 613, 614-615 (672 SE2d 672) (2009).

[4] OCGA § 16-5-90 (a) (1).

[5] Id.

[6] *DeLouis v. Sheppard*, 277 Ga. App. 768, 769 (627 SE2d 846) (2006).

supported a determination that the conduct was done for the purpose of harassing and intimidating them.[7] Although Garnsey denied some of the conduct and testified that he had legitimate purposes for some of the conduct, the court was not required to accept his explanations.[8]

Moreover, there was sufficient evidence that Garnsey's conduct put Buice in reasonable fear for the safety of his family, and that it put Buice's wife in reasonable fear for her safety and the safety of her daughter. Buice's wife testified that Garnsey's conduct caused her to be afraid to spend time in her yard with her daughter when her husband was not at home, or to walk down the road near her house. Buice also testified that Garnsey's conduct caused him to fear for his family's safety when they were at the house without him.[9] Given that Garnsey's conduct included discharging a weapon near the Buices' house, attempting to "run [Buice] off the road," and repeatedly driving by or stopping in front of the Buices' house and staring at them, we find no merit in Garnsey's contention that the Buices' fears were not reasonable.[10] The trial court did not abuse its discretion in finding that the evidence supported the grant of a stalking protective order under OCGA § 16-5-94 (d).[11]

2. Garnsey contends that the court abused its discretion by including in the protective order certain terms, arguing that those terms either violated constitutional principles or were not authorized by OCGA § 16-5-94 (d). In *Collins v. Bazan*,[12] we considered similar challenges to a particular term within a stalking protective order. In that case, we held that the appellant had not preserved for appeal his constitutional arguments, because he failed to raise those

---

[7] See *Thornton v. Hemphill*, 300 Ga. App. 647, 649 (1) (686 SE2d 263) (2009); *DeLouis*, supra at 770-771 (1); *Johnson v. Smith*, 260 Ga. App. 722 (2) (580 SE2d 674) (2003).

[8] See *DeLouis*, supra at 769 (in reviewing the sufficiency of the evidence supporting a stalking protective order, an appellate court does not weigh the evidence or assess witness credibility).

[9] Compare *Sinclair*, supra at 616 (evidence was insufficient to support stalking protective order where petitioner did not testify that alleged stalker's conduct had caused him to fear for his safety, but rather that the conduct wearied him and interfered with his activities).

[10] See *DeLouis*, supra at 770-771 (1) (evidence was sufficient to show stalking where appellant physically confronted neighbor in manner that neighbor felt was sexually intimidating, stared at neighbor for periods of time while she was outside, causing her to feel threatened, and made lewd gestures and comments toward her or in her presence). Compare *Pilcher*, supra at 168 (supervisor's verbal taunts, which occurred during work hours and including cursing, threatening employees' jobs, and belittling employees, were not sufficient to create reasonable fear for safety of employees or their families); *Sinclair*, supra (evidence did not authorize entry of stalking protective order; no reasonable person would have feared for his or his family's safety due to appellant's threatened lawsuit, and victim did not testify that appellant's other behavior caused him to fear for his safety).

[11] See *DeLouis*, supra.

[12] 256 Ga. App. 164 (568 SE2d 72) (2002).

objections before the trial court.[13] We noted that the appellant *had* raised before the trial court a meritorious objection that OCGA § 16-5-94 (d) did not authorize a specific term in the order, however, and we thus reversed the portion of the protective order containing the unauthorized term.[14]

In this case, Garnsey failed to raise below either his constitutional objection or his statutory objection to the terms of the protective order about which he now complains. The record shows that, at the conclusion of the evidentiary hearing, the trial court ruled that it would enter a protective order and engaged both parties in a discussion of the proposed terms of that order. Although Garnsey's counsel sought clarification on several of the proposed terms, he did not object to any of them or otherwise raise the constitutional or statutory arguments asserted in this appeal. Consequently, these arguments have not been preserved for appeal.[15]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED OCTOBER 22, 2010.

*Joseph C. Murphy*, for appellant.
*Turner & Willis, Brett D. Turner*, for appellee.

---

[13] Id. at 165 (1).
[14] Id. at 165-166 (2).
[15] See id. at 165 (1).