**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**December 13, 2018**

# In the Court of Appeals of Georgia

A18A1463. JENKINS v. JENKINS.                    GS-054

GOSS, Judge.

We granted David Jenkins's application for a discretionary appeal concerning the entry of a 12-month protective order against him as sought by his daughter Michelle. Jenkins argues that the trial court abused its discretion when it granted the protective order because the evidence did not show that he stalked his daughter, that he posed any danger to her, or that she was in reasonable fear for her safety. We find no error and affirm.

"The grant or denial of a motion for a protective order lies within the sound discretion of the trial court, and its decision on such a motion will not be reversed absent an abuse of that discretion." (Citation omitted.) *Lewis v. Lewis*, 316 Ga. App. 67, 68 (728 SE2d 741) (2012). "An abuse of discretion occurs where a ruling is

unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citation and punctuation omitted.) Id.

Thus construed in favor of the trial court's judgment, the record shows that in August 2017, Michelle sought a 12-month extension of a temporary protective order (TPO) against her father on the basis of his threatening text messages. The trial court declined to extend the TPO at that time because David might have had a legitimate purpose in contacting Michelle about his impending lawsuit against her, but warned that "there's no more legitimate purpose for [contact] to be going between the parties when it's been made clear that it's unwanted and [that David] was harassing [Michelle] at this point and [she] fear[ed] for [her] safety and [felt] intimidated."

In November 2017, however, David began sending Michelle text messages referring to Michelle's partner as an "evil bitch," "Satan," a "demon," and the "worst mother, ever ever in f***ing mankind." Even as he acknowledged that his attorneys had advised him not to contact Michelle, David disowned her and cursed the couple. On November 15, 2017, Michelle obtained another ex parte TPO instructing David "not to have any contact, direct, indirect, or through another person[,] with [Michelle] by telephone, fax, e-mail, or any other means of communication[.]"

2

At some point before the end of the 2017 Thanksgiving holiday (on Sunday, November 26), during which he was out of town, David texted Michelle that he had "hear[d] there's a protective order service waiting on me when I get back to Atlanta." Shortly afterward, David texted Michelle that "I do believe definitely that [Michelle's partner] is going to get hers" and that "[s]ince you're running with the devil, you'll get yours, too." On the day after Thanksgiving, Michelle, who was in Colorado and thus "felt safe calling him," called David. He responded by text: "I'm drunk; do you want to talk?" When Michelle responded that they could talk the following day, David responded: "About what, the protective order? You have to get a protective order against me so that I won't hurt your family. You probably don't want to talk to me. F*** both you motherf***ers."

At 1:25 p. m. on November 27, 2017, David was served with the ex parte order issued on November 15. Eleven minutes later, David texted Michelle a picture of the order. David sent Michelle an additional 6 text messages on the following day, November 28. Michelle responded to one of these messages, telling David that their relationship ended "when [he] continued [his] vicious and hateful and threatening rants." David responded: "F*** off; I'm done with you forever."

On December 11, 2017, a hearing was held to determine whether the TPO should be extended for an additional 12 months. David was not present, but was represented by counsel. At the hearing, Michelle testified that David had physically threatened her in April 2016, that she was in fear for her own and her children's safety, and that she had seen David try to hit a girlfriend with a car in Michelle's driveway, and that David had grabbed her son "by the neck" over the previous Thanksgiving. Michelle also presented evidence of the many text messages David sent in November 2017, including those sent after David was served with the ex parte November 15 order. At the conclusion of the hearing, the trial court granted the 12-month extension.

We granted David's application for a discretionary appeal from that order, and he now argues that the evidence before the trial court was insufficient to show that he had stalked his daughter, that he posed a danger to her, or that she was in reasonable fear for her or her family's safety. We disagree.

OCGA § 16-5-90 provides in relevant part:

(a)(1) A person commits the offense of stalking when he or she follows, places under surveillance, or *contacts another person* at or about a place or places without the consent of the other person *for the purpose of harassing and intimidating the other person*. . . . [T]he term "contact"

4

shall mean any communication including without being limited to communication in person, *by telephone*, by mail, by broadcast, by computer, by computer network, or by any other electronic device . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by *placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose*. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

(Emphasis supplied.) OCGA § 16-5-91 provides in relevant part:

(a) A person commits the offense of *aggravated* stalking when such person, *in violation of a . . . temporary protective order*, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction . . . prohibiting the behavior described in this subsection, follows, places under surveillance, or *contacts another person at or about a place or places without the consent of the other person* for the purpose of harassing and intimidating the other person.

(Emphasis supplied.)

Here, the evidence shows that although David was served with the November 15 TPO, which barred him from having any contact with Michelle, on November 27,

5

David contacted Michelle repeatedly by text on November 27 and 28. As we have previously noted:

> A defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be convicted of stalking. Even behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim.

(Punctuation and footnote omitted.) *Placanica v. State*, 303 Ga. App. 302, 304 (693 SE2d 571) (2010). Further, "even a single violation of a protective order may violate OCGA § 16-5-91 (a) if that violation is part of a pattern of harassing and intimidating behavior." (Citations and punctuation omitted.) *Slaughter v. State*, 327 Ga. App. 593, 596 (1) (a) (760 SE2d 609) (2014); see also *Louisyr v. State*, 307 Ga. App. 724, 729 (1) (706 SE2d 114) (2011) (because OCGA § 16-5-91 does not require "multiple violations of a protective order," "a pattern of harassing and intimidating behavior" culminating in a single violation of a protective order was sufficient to sustain a conviction for aggravated stalking). The fact that Michelle contacted David at one or more points after David's first contact on November 27 does not affect our conclusion that this first contact was in violation of that order. See *Revere v. State*, 277 Ga. App. 393, 394 (1) (a) (626 SE2d 585) (2006) (evidence sufficed to sustain conviction for

6

aggravated stalking even when a victim had previously consented to defendant's presence on the premises after the issuance of a no-contact order).

The evidence before the trial court also authorized the conclusion that Michelle had previously seen her father engage in domestic violence, including against her son, such that her father's threats put her in reasonable fear for her or her family's safety. We are not entitled to substitute our judgment for the trial court's as to the weight given this or other evidence. See *Louisyr*, 307 Ga. App. at 729 (1) (in determining whether stalking occurred, a factfinder could consider "a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly") (footnotes omitted). Compare *Pilcher v. Stribling*, 282 Ga. 166, 168 (647 SE2d 8) (2007) (verbal taunts during working hours were not sufficient, taken alone, to create reasonable fear on the part of the victims).

For all these reasons, the trial court did not abuse its discretion when it issued the 12-month protective order at issue.

*Judgment affirmed. Miller, P. J., and Brown, J., concur.*