**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 27, 2020**

# In the Court of Appeals of Georgia

A19A1730. OLIVER v. FIELD.

COOMER, Judge.

Anthony Oliver appeals from two orders in which the trial court entered a permanent protective order and a bill of peace requiring Oliver to seek approval from the trial court before filing pro se lawsuits. Oliver contends the trial court abused its discretion in granting the permanent protective order against him because the party seeking the order failed to establish each element of the offense of stalking. Oliver further argues the trial court abused its discretion in issuing the bill of peace without first providing him an opportunity to be heard on the matter. For the reasons that follow, we affirm.

"The grant or denial of a motion for a protective order lies within the sound discretion of the trial court, and its decision on such a motion will not be reversed absent an abuse of that discretion." *Jenkins v. Jenkins*, 348 Ga. App. 290, 291 (822 SE2d 404) (2018) (citation omitted). "An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." Id. So viewed, the evidence shows that Oliver and Crystal Field met in California in 2002 and lived together for approximately five years. Oliver and Field have two children together. At some point during their relationship, there were incidences of domestic violence that occurred between Oliver and Field, which led to Field obtaining a protective order against Oliver in 2004. The protective order was for three years. Field subsequently separated from Oliver in 2006 and later moved to Minnesota. Oliver followed Field to Minnesota where there were other incidences of domestic violence. Field did not obtain a protective order while in Minnesota, but instead moved back to California briefly before moving to Georgia in 2009.

In 2017, Field and Oliver appeared for a legitimation hearing regarding their two children, in which Oliver was denied legitimation. Following the hearing, Field filed an ex parte protective order against Oliver after making several police reports. For example, in February 2016, Field filed a police report after learning that Oliver

was contacting her children's school without permission. In September 2016, Field filed a police report after Oliver threatened her when she refused to let him see her children. In June 2017, Field filed a police report after Oliver slashed the tires to her vehicle. In October 2017, Field filed a police report after Oliver followed her and her children home from school. In addition, Oliver filed several lawsuits against Field, her attorney, and several members of the Effingham County judicial circuit.

At the final hearing on the protective order in August 2018, Field testified that she believed Oliver was "mentally unstable" and requested the trial court to enter a permanent protective order against Oliver. Oliver did not testify on his own behalf. Following the hearing, the trial court granted Field's request that the temporary protective order be made permanent and made several findings regarding Oliver's actions in the record. The trial court entered the permanent order of protection on September 14, 2018. Oliver filed a motion for reconsideration, motion for new trial, and motion to set aside judgment. The case appeared before the trial court on December 17, 2018, but was dismissed in open court on oral motion when Oliver failed to appear. Oliver also filed motions to disqualify the trial judge, which were later denied as untimely. Oliver filed an affidavit of poverty in December 2018, and a hearing was specially set for March 2019.

In a March 2019 order, the trial court found Oliver's affidavit of poverty moot because the proceedings were under the Family Violence Act and therefore Oliver was not required to pay any filing or service fees. In that same order, the trial court noted that Oliver had filed some 27 lawsuits against several judges, state officials, and county agencies and entered what appears to be a bill of peace preventing Oliver from filing additional lawsuits pro se without prior approval of the trial court. Oliver now appeals both the September 2018 and March 2019 order.

1. In his first five enumerations of error, Oliver essentially argues the trial court abused its discretion by granting Field's petition for protective order because Field failed to establish each element of the offense of stalking. Oliver contends the trial court had no factual basis on which to grant Field's petition for protection because there was no evidence that he (i) "followed, surveilled, or contacted" Field, (ii) "engaged in a pattern of harassing or intimidating behavior," (iii) contacted Field for "an illegitimate purpose," or (iv) caused Field to be placed in fear for her safety. We disagree.

"To obtain a protective order based on stalking, the petitioner must establish the elements of the offense by a preponderance of the evidence. The grant or denial of a motion for protective order generally lies within the sound discretion of the trial

4

court, and will not be reversed absent an abuse of that discretion." *Bruno v. Light*, 344 Ga. App. 799, 800-801 (1) (a) (811 SE2d 500) (2018) (citation omitted). OCGA § 16-5-90 (a) (1) provides in part that "[a] person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."

> The term "contact" shall mean any communication. The term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. The term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

*Bruno*, 344 Ga. App. at 801 (1) (a) (emphasis and punctuation omitted).

In its September 2018 order granting Field's petition for protective order, the trial court found that there had been a restraining order previously issued against Oliver in California in 2004 and that Oliver had followed Field to Minnesota where additional acts of domestic violence were committed. The trial court further found

that Field came to Georgia to get away from Oliver's violence. During the August 2018 final hearing, the trial court heard evidence regarding several instances in which Oliver engaged in harassing or intimidating conduct against Field such as when Oliver followed Field and her children home from school, when Oliver was seen in the vicinity of her home after Field's car's tires had been slashed, when Oliver contacted the Field's children's school without permission, and when Oliver told Field's that if she did not let him see the children she was dead. Moreover, at the final hearing on the order of protection, Oliver did not present any personal testimony to rebut the allegations of stalking raised by Field. Based on the foregoing, we find that there was sufficient evidence to support the trial court's entry of a stalking protective order against Oliver and the trial court did not abuse its discretion in doing so. See *Thornton v. Hemphill*, 300 Ga. App. 647, 649 (1) (686 SE2d 263) (2009).

2. Oliver next argues the trial court abused its discretion and denied him due process when it entered its March 2019 order declaring him to be a "vexatious litigant." Oliver contends the trial court's bill of peace should be reversed because the trial court failed to inform him of the hearing and offer him an opportunity to be heard on the issue. We disagree.

OCGA § 23-3-110 provides

6

(a) It being the interest of this state that there shall be an end of litigation, equity will entertain a bill of peace: (1) To confirm some right which has been previously satisfactorily established by more than one legal trial and is likely to be litigated again; (2) To avoid a multiplicity of actions by establishing a right, in favor of or against several persons, which is likely to be the subject of legal controversy; or (3) In other similar cases. (b) As ancillary to this jurisdiction, equity will grant perpetual injunctions.

Georgia courts have long held that the "[p]revention of vexatious, oppressive and ruinous litigation is a frequent cause for the exercise of equity jurisdiction, and injunctions to restrain a multiplicity of suits in such cases are not only permitted, but favored, by the courts." *Rolleston Living Trust v. Kennedy*, 277 Ga. 541, 542 (591 SE2d 834) (2004) (citation and punctuation omitted).

Here, the record shows that following the August 2018 final hearing, Oliver filed a motion for reconsideration, motion for new trial, and a motion to set aside judgment. A hearing on Oliver's motions was set for December 17, 2018; however, Oliver was not present for the hearing and the case was dismissed after Field made an oral motion. Two days later on December 19, 2018, Oliver filed an affidavit of

7

poverty, and a hearing was specially set for March 2019.[1] According to the March 2019 order, a court reporter was not present for the March 2019 hearing and no transcript of the hearing was made.

In its order following the hearing, the trial court noted that after reviewing Oliver's affidavit in open court and the examination of Oliver by Fields and the trial court under oath, Oliver offered no other evidence or testimony during the hearing. The trial court concluded that because the proceedings were under the Family Violence Act, there were no filing or service fees from which the court could relieve Oliver, and therefore the entire matter was moot. The trial court's order went on to state that evidence produced at the hearing revealed that Oliver had "some 27 lawsuits" not counting the one filed in federal court against the trial judge as well as several threats by Oliver to "file lawsuits against several other people, state officials, [and] state and county agencies[.]" The trial court further concluded that while it was "not the purpose of this court to close the courthouse doors to [Oliver] for legitimate business," in view of the evidence presented, Oliver should be restrained from filing

---

[1] The hearing was initially set for February 2019 but was later moved to March 5, 2019. In the order specially setting the hearing, the trial court noted that all motions made prior to the August 2018 hearing were deemed moot, abandoned, and otherwise denied and the trial court would only hear and take evidence on Oliver's pauper's affidavit.

8

any other lawsuits pro se in the county until it is first reviewed by the chief judge or his or her designee.

While we recognize the constitutional rights of pro se litigants to freely bring their grievances to our courts for adjudication, it has long been held by this Court that "[n]o person is free to abuse the courts by inundating them with frivolous suits which burden the administration of the courts for no useful purpose." *In re Lawsuits of Carter*, 235 Ga. App. 551, 552 (1) (510 SE2d 91) (1998). Here, the record reflects, and Oliver does not dispute, that Oliver received notice of, was present for, and was examined under oath at the hearing from which the trial court issued its order placing pro se limitations on future lawsuits brought by Oliver. Because there is no transcript of the hearing, which is necessary for this Court to review the alleged error, we must presume that the trial court's recitations of the proceedings and findings are supported by sufficient competent evidence. See *Hensley v. Young*, 273 Ga. App. 687, 687 (615 SE2d 771) (2005).

Moreover, the pro se limitations set forth in the trial court's order did not deprive Oliver of meaningful access to the court and are reasonable given the evidence presented. See *Smith v. Adamson*, 226 Ga. App. 698, 699-700 (3) (487 SE2d

9

386) (1997) (pro se litigation limitations were not unreasonable under the circumstances where defendant filed at least 25 unsuccessful lawsuits against public officials, entities, and employees). Accordingly, we find no error.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.