**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 30, 2020**

# In the Court of Appeals of Georgia

A20A0236. SWEARNGIN v. ROWELL.

HODGES, Judge.

Following the collapse of their long-term relationship, Gid Rowell obtained a twelve-month stalking protective order against Dina Swearngin. Upon Rowell's motion, the Superior Court of Fayette County later converted the order to a three-year permanent protective order. Swearngin appeals from the denial of her motion for new trial, arguing that the trial court erred in admitting electronic mail metadata evidence and that the trial court abused its discretion in converting the protective order to a three-year order. Finding no error, we affirm.

Construed in favor of the trial court's ruling,[1] the evidence revealed that Rowell and Swearngin maintained a ten-year affair, which Rowell ended in the fall of 2016.

---

[1] See *Garnsey v. Buice*, 306 Ga. App. 565, 566 (1) (703 SE2d 28) (2010).

Swearngin did not take the break-up well, and she sent Rowell numerous messages attempting to rekindle the relationship. Rowell estimated he received over 1,500 texts and hundreds of emails from Swearngin and others "pressuring [him] to continue" the relationship. Swearngin, whose husband worked in the corporate office of the company where Rowell worked as a contractor, also threatened Rowell's job if he did not return to her, including a text that read, "your job is gone if you don't stay with me." Rowell did not reply and, despite having received a positive work review on October 17, 2016, Rowell was fired on October 20, 2016.[2]

Immediately thereafter, Rowell petitioned for a temporary protective order, and the trial court entered an ex-parte temporary protective order on October 21, 2016, pending a hearing. During that hearing, Rowell and Swearngin agreed to stay away from each other. But Swearngin began contacting Rowell again in November and sent him messages almost daily during the month of December. Rowell then requested entry of a new order, and the trial court issued a consent twelve-month protective order on January 10, 2017. A couple of weeks after entry of the order, Rowell began

---

[2] Rowell believed that Swearngin was the architect of his dismissal, and additional evidence indicated that Rowell's employer told him that his assignment simply "ended" and the he was "no longer needed. . . ." Swearngin denied any role in Rowell's loss of his employment.

receiving a deluge of text messages and emails from an anonymous source. The messages called Rowell "dumb" for dating another woman, whom the anonymous writer described as "sick," abusive, and promiscuous. Rowell attempted to discover the source of the emails by extracting metadata from emails Swearngin sent him previously to show that the anonymous emails originated from the same computer.

Rowell also received an anonymous package, including a purported five-page subpoena from an unidentified employee of a Carroll County court, containing salacious accusations about the woman he was allegedly dating. The purported subpoena claimed that Rowell had been manipulated by the new woman and that he had lost his "career, reputation, and a lengthy relationship." The document also accused the new woman of destroying Rowell's relationship with Swearngin and urged Rowell to make "significant reparations to those you have hurt" so he could "recover pieces of [his] former life."

Although Rowell did not have a Facebook account, his friends sent him a series of screen shots of what appeared to be Swearngin's Facebook page on which she had written "77 days[,]" "59 days[,]" "50 days[,]" and "131 days. Done." The days correlated with the remaining days of the protective order. Furthermore, according to Rowell, a Facebook account was created using his name and photos of him that

Swearngin had taken. He also tried to create a new email account, but the name "Gid Rowell" had already been taken with the service provider; Rowell discovered that the email account was linked to Swearngin's phone number.

Rowell filed a motion to hold Swearngin in contempt of the protective order, but following a hearing, the trial court found that there was insufficient evidence that Swearngin had sent the anonymous emails. Thereafter, Rowell filed a motion to release Internet Protocol ("IP") addresses in order to obtain additional information related to the source of the anonymous emails. The trial court granted Rowell's motion and, using the information he obtained as a result of the trial court's order, Rowell moved to convert the protective order to a three-year protective order. Rowell attached to his motion a report prepared by a forensic computer analyst setting forth how IP addresses are assigned, which concluded that the anonymous emails Rowell received originated from a computer address belonging to Swearngin's husband.

During the hearing on Rowell's motion to convert the protective order, he testified regarding the emails he received, Swearngin's Facebook postings, and the email and Facebook accounts opened without his consent. At the beginning of this hearing, Swearngin objected to the admission of the forensic report unless the expert who provided the report was available to testify, and the trial court sustained the

4

objection. Although Rowell had retained an expert to testify about the report, the trial court found that the expert need not testify since the report was not admitted.

In her testimony, Swearngin denied having sent Rowell the anonymous emails. She admitted she had posted the countdown on her Facebook page, but claimed she was counting down to a performance of "The Lion King." Immediately after Swearngin's direct examination, the trial court ruled that it was extending the protective order to three years. The court found that Swearngin lacked credibility, and the court heard no additional testimony although both Swearngin and Rowell had secured additional witnesses.

Swearngin moved for a new trial, arguing that the trial court erred in admitting the email metadata evidence based solely on Rowell's testimony that he had retrieved the data. Swearngin also asserted that the trial court abused its discretion in extending the protective order. The trial court denied the motion for new trial,[3] and Swearngin appeals.

---

[3] The hearing on Swearngin's motion for new trial included testimony by an expert witness Swearngin presented. After hearing the expert's testimony, the trial court noted that its prior "determinations regarding the credibility of the witnesses remain[ed] unchanged."

1. Swearngin first argues that the trial court erred in admitting the email metadata evidence, which Rowell compiled, without proper authentication. According to Swearngin, such evidence must be forensically obtained and introduced through expert testimony. We find no reversible error.

Under Georgia's evidence code, "[t]he requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a). Under OCGA § 24-9-901 (b) (4), the appearance and content of a document constitute circumstantial evidence of admissibility. See generally *Koules v. SP5 Atlantic Retail Ventures*, 330 Ga. App. 282, 286-287 (2) (767 SE2d 40) (2014) (finding that printout of email may be authenticated by different means, including circumstantial evidence; "the question of whether [the printout] is 'authentic' is simply whether it is what it purports to be"). We review a trial court's decision to admit evidence for abuse of discretion. See *Simon v. State*, 279 Ga. App. 844, 847 (2) (632 SE2d 723) (2006).

Here, we find no abuse of discretion. As a threshold matter, we note that Georgia favors the admission of evidence even if its probative value is slight. See *In the Interest of L. P.*, 324 Ga. App. 78, 81 (2) (749 SE2d 389) (2013). And, "during

6

a nonjury trial, it is presumed that the court is able to sift the wheat from the chaff and select only the legal evidence." (Citation and punctuation omitted.) *Giang v. State*, 285 Ga. App. 491, 493 (3) (646 SE2d 710) (2007). During the hearing on his motion to convert the protective order, Rowell testified that he printed out the metadata attached to emails previously received from Swearngin to compare the information to the metadata from those emails sent anonymously. Stated differently, Rowell provided testimony that the documents were what they purported to be – printouts of data associated with anonymous emails he had received. Although Swearngin objected, arguing that the data could have been manipulated, the trial court found that objection went to the weight to be given the evidence rather than its admissibility.[4]

Irrespective of the trial court's decision admitting the metadata evidence, however, the trial court issued its ruling extending the protective order immediately after Swearngin testified, finding that Swearngin lacked credibility. See OCGA § 24-6-620 ("The credibility of a witness shall be a matter to be determined by the trier of

---

[4] Although we find that Rowell was able to *tender* the metadata printouts, we do not hold that Rowell was qualified to testify regarding the *significance* of the data. Indeed, an expert witness may be needed to explain how metadata can be used to trace the sender of an email, but we need not decide that issue here. Nevertheless, we note that Rowell had such an expert prepared to testify at the hearing, but the trial court ruled before hearing from the expert.

fact. . . ."); *Hamrick v. Seward*, 126 Ga. App. 5, 7 (1) (189 SE2d 882) (1972) (finding that trial court, sitting without a jury as the trier fact, "is the judge of the credibility of the witnesses, including parties"). As a result, it is unlikely that the admission of the metadata contributed to the trial court's ruling. "[O]n appeal, a party must show harm as well as error." (Citation and punctuation omitted.) *Thornton v. Hemphill*, 300 Ga. App. 647, 651 (3) (686 SE2d 263) (2009). In view of the trial court's credibility determinations, Swearngin has not shown that any error with the trial court's admission of the metadata printouts "would have changed the outcome of the hearing, and therefore has failed to show that it was harmful." Id. For these reasons, we find no reversible error in the admission of the metadata.

2. Next, Swearngin contends that the evidence was insufficient to support the trial court's conversion of the twelve-month protective order to a three-year permanent protective order. We are not persuaded.

Under Georgia law,

[t]he grant or denial of a motion for a protective order lies within the sound discretion of the trial court, and its decision on such a motion will not be reversed absent an abuse of that discretion. An abuse of discretion occurs where a ruling is unsupported by *any* evidence of record or where that ruling misstates or misapplies the relevant law.

(Citation and punctuation omitted; emphasis supplied.) *Jenkins v. Jenkins*, 348 Ga. App. 290, 291 (822 SE2d 404) (2018).

Again, we find no abuse of discretion. OCGA § 16-5-94 (a) permits a person who has been the victim of stalking to seek a protective order. The offense of stalking is committed when a person

> follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

OCGA § 16-5-90 (a) (1). Here, the evidence supports the conclusion that Swearngin engaged in a pattern of harassing and intimidating conduct directed toward Rowell. See *Thornton*, 300 Ga. App. at 649 (1) (stalking established by the "frequency and nature" of abusive emails and surveillance). Moreover, Rowell testified that Swearngin's perseverance, the purported subpoena, and the creation of email and Facebook accounts in his name frightened him. Id. Although Swearngin denied

9

sending the anonymous emails and offered a benign explanation for her Facebook entries, the trial court was authorized to discredit her testimony. See *Garnsey v. Buice*, 306 Ga. App. 565, 567 (1) (703 SE2d 28) (2010). Under these facts, we find no abuse of discretion in the trial court's conversion of the twelve-month protective order to a three-year permanent protective order. See *Elgin v. Swann*, 315 Ga. App. 809, 811-812 (3) (728 SE2d 328) (2012) (holding trial court did not abuse its discretion in entering a protective order); *De Louis v. Sheppard*, 277 Ga. App. 768, 770-771 (1) (627 SE2d 846) (2006) (same).

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur.*